### LEWIS v. SHELL OIL CO.

No. 4755.

District Court, N. D. Illinois.

June 14, 1943.

548

Mortimer Porges, of Chicago, Ill., for plaintiff.

C. S. Gentry, of New York City, and T. I. McKnight, of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

Plaintiff, a gasoline filling station operator, brings this action at law claiming treble damages in the sum of $4,290.00 under the Clayton Act, as amended by the Robinson-Patman Act, setting up as a ground for his action that defendant company, which is engaged in the wholesale and retail selling and distributing of oil products throughout the United States, sold gasoline to other dealers within the United States at from one-half to one cent less than it sold the same products to plaintiff. .

Defendant has moved to dismiss the complaint, (1) for lack of jurisdiction over the subject matter; and (2) on the ground that the complaint does not state a cause of action against defendant. In the event the complaint is held sufficient, then defendant asks for a bill of particulars.

In support of its motion to dismiss defendant has filed two affidavits (under Rule 6(d) Civil Rules of Procedure, 28 U.S.C.A. following section 723c) setting out among other things that plaintiff operated a filling station from June 9, 1939, to April 12, 1941, at No. 3139 Ogden Avenue, Chicago, Illinois, where he retailed defendant's products under a Reseller's Gasoline Sales Contract, and during which period he sold approximately 286,000 gallons of such products. Under the contract the defendant agreed to sell and deliver "by and through its tank wagons" and plaintiff agreed "to buy and receive" at his said service station his requirements of gasoline, and to pay therefor defendant's service station price "as posted at seller's bulk plant from which delivery is made to buyer," which plant is located at No. 2751 West 51st Street, Chicago, and has a storage capacity of 250,000 gallons of all kinds of gasoline which plaintiff used and might order. Pursuant to this contract plaintiff telephoned his orders from his place of business to defendant's bulk plant, whereupon plaintiff withdrew from the storage tank the amount and kind of gasoline ordered, placed it in a tank wagon and delivered it to plaintiff's station. All sales to plaintiff, and to all other customers within a radius of five miles of plaintiff's place of business were handled in this same manner during all of the time plaintiff operated his filling station. During all of this period, as well as before and up to the present time, defendant owned and operated a large refinery at Wood River, Illinois, where it refined all kinds and grades of gasoline, and shipped same by pipe lines to its storage plants at East Chicago, Indiana, from whence it was transported to defendant's bulk plants in adjoining territory. The affidavits also state that no customer of defendant within five miles of plaintiff's station received any gasoline from any other source than from defendant's bulk plant in Chicago.

Plaintiff brings this action under the Robinson-Patman Act, Title 15 U.S.C.A. §§ 13, 13a, 13b and 21a, and particularly relies on certain paragraphs of Section 13. Section 13(a) provides in part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce * * * to discriminate in price * * * where either or any of the purchases involved in such discrimination are in commerce, * * * [or] where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them."

From a reading of the Act it is quite obvious that it covers only such discriminations as occur *in the course of commerce,* which in the instant case would be any such commerce conducted by defendant.

Defendant urges that none of the transactions between defendant and plaintiff, or his competitors, was in interstate commerce, hence the Robinson-Patman Act does not apply, and plaintiff therefore cannot maintain this action.

Plaintiff, on the other hand insists that defendant's sale and delivery of gasoline to

him at his filling station in Chicago was a transaction in interstate commerce, and cites in support thereof the case of Midland Oil Company v. Sinclair Refining Company, D.C., 41 F.Supp. 436.

■ I do not agree with those decisions which hold that in cases of this type the interstate transaction continues until the bulk plant operator has delivered the gasoline into the tanks at the purchaser's filling station. Plaintiff in support of his position cites many other cases dealing with violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. In those cases the courts have almost universally held that if interstate commerce *is affected* or restrained by the acts or transactions complained of, then the Sherman Act has been violated, although the acts themselves may have all taken place within one state. However, there is a distinction between acts or transactions which merely affect commerce, and those which are actually performed in commerce. It is those acts and transactions which are actually performed in commerce against which the Robinson-Patman Act is specifically directed, and nowhere does that Act refer to transactions which only affect commerce. In an action brought under the Robinson-Patman Act it is necessary to allege and prove that the transactions complained of are actually in interstate commerce, while in actions brought under the Sherman Anti-Trust Act it is sufficient if the transactions complained of are shown to have affected interstate commerce. But even in those cases, the Supreme Court, in Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 850, 79 L.Ed. 1570, 97 A.L.R. 947, in discussing the lengths to which the Federal Government may go in controlling intrastate transactions on the ground that they affect interstate commerce, has said:

"The distinction between direct and indirect effects has been clearly recognized in the application of the Anti-Trust Act. Where a combination or conspiracy is formed, with the intent to restrain interstate commerce or to monopolize any part of it, the violation of the statute is clear. Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 310, 45 S.Ct. 551, 69 L.Ed. 963.

"But, where that intent is absent, and the objectives are limited to intrastate activities, the fact that there may be an indirect effect upon interstate commerce does not subject the parties to the federal statute, notwithstanding its broad provisions."

■ The contract here in question was made in Illinois, the gasoline involved was located in Illinois, and was shipped only from defendant's bulk plant to plaintiff's filling station, both of which, it is agreed, were located in Illinois. I am of the opinion that this was a purely intrastate transaction, the interstate movement having ended when the gasoline came to rest in defendant's bulk plant.

In Chicago, M. & St. P. Ry. Co. v. Iowa, 233 U.S. 334, 34 S.Ct. 592, 595, 58 L.Ed. 988, a coal company ordered coal in carload lots shipped to it at Davenport, Iowa, from points in Illinois. After paying the freight to other railroad companies, the coal company reconsigned the cars to different points in Iowa on the Milwaukee line. The Milwaukee Railroad refused to comply with the order of the Iowa Railroad Commission, that it accept such shipments, which were loaded in the cars of other railroad companies, contending the transaction was in interstate commerce. The Supreme Court of the United States held that the interstate transaction ended at Davenport, and that the order of the Iowa Railroad Commission was valid, saying:

"But the fact that commodities received on interstate shipments are reshipped by the consignees, in the cars in which they are received, to other points of destination, does not necessarily establish a continuity of movement, or prevent the reshipment to a point within the same state from having an independent and intrastate character."

In Lipson v. Socony Vacuum Corporation, 1 Cir., 87 F.2d 265, 267, involving the same Act as is involved in the instant case, a plaintiff purchased gasoline from a defendant for resale at a service station in Boston, which gasoline was delivered by tank wagon from defendant's storage tanks in Massachusetts. Plaintiff claimed that defendant had delivered gasoline to other retail dealers at prices substantially less than those charged to plaintiff, thereby discriminating against him, and he therefore brought his action to recover treble damages. The court there said:

"We are unable to agree that, as set forth in paragraph 11 of the amended declaration, the plaintiff has alleged with substantial certainty that, owing to what it terms a continuous flow of gasoline, all gasoline brought into the northeastern ter-

ritory by the defendants remains in interstate commerce until it is delivered into the storage tanks of the retailer. While it is clear that the defendants must keep a supply on hand in their storage tanks to meet the fluctuations of demands of the retailers, an anticipated demand by retail customers is not sufficient to render shipments a transaction in the course of interstate commerce until delivered to the customer whenever a demand arises."

In the case at bar defendant maintains a bulk or storage plant in Illinois, which is in effect a warehouse, and I do not believe that defendant's activities in maintaining and operating such a plant, from which it supplies the demands of filling station operators, can be construed as part of a continuous interstate haul. The gasoline which is shipped by defendant to itself at its bulk plant in Chicago, there comes to rest, and is not designed for any specific customer, and therefore any subsequent local transaction concerning it constitutes no part of interstate commerce. The Circuit Court of Appeals for this Circuit, in the case of Walling v. Goldblatt Brothers, 128 F.2d 778, 782, said:

"Defendant knew in advance from its records in a general way, the needs of the retail stores and acted accordingly. But defendant was not relying on existing orders from its stores or customers. The goods arrived at the warehouses and came to rest. They were not destined for any specific customer or store. The mere fact that an anticipated local transaction causes movement in interstate commerce is not sufficient to constitute the wholly local transaction after arrival a part of commerce."

The case of Jewel Tea Company v. Williams, 10 Cir., 118 F.2d 202, 207, involved the question of whether the Tea Company's Oklahoma salesmen were engaged in interstate commerce, and were therefore covered by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The court there said: "Where goods are ordered and shipped in interstate commerce to meet the anticipated demands of customers without a specific order therefor from the customer and the goods come to rest in a warehouse, the interstate commerce ceases when the goods come to rest in the state. It does not continue until the demand eventuates in the form of an order and the merchandise is delivered to the retailer."

I am of the opinion that plaintiff in the case at bar has not stated a cause of action against defendant under the Robinson-Patman Act, and therefore defendant's motion to dismiss is allowed.