### ATLANTIC CO. v. CITIZENS ICE & COLD STORAGE CO. et al.

#### No. 12713.

United States Court of Appeals
Fifth Circuit.

Dec. 28, 1949.

454

Robert B. Troutman, Atlanta, Ga., William K. Meadow, Atlanta, Ga., Vance Custer, Bainbridge, Ga., for appellant.

J. Willis Conger, Bainbridge, Ga., A. B. Conger, Bainbridge, Ga., for appellee.

Before HUTCHESON, McCORD and SIBLEY, Circuit Judges.

HUTCHESON, Circuit Judge.

As originally brought under the Robinson-Patman Act, 15 U.S.C.A. § 13a, the suit was for an injunction restraining defendant from cutting prices in the sale of ice, and in the operation of its meat curing and cold storage properties in Bainbridge and Colquitt, Georgia, in violation of the act and for the damages caused thereby.

The claim was: that defendant is, and for some time has been, engaged in interstate commerce in the manufacturing, sale, and distribution of ice, and the curing of meats and cold storage in a great many cities and towns in Georgia, including Colquitt and Bainbridge, and in other states; that in 1947, Crystal Ice Co., in Colquitt, and Citizens Ice and Cold Storage Company and Flint River Mills, at Bainbridge, commenced the manufacture and sale of ice; that at that time in practically every city where defendant had no competition its price of ice was 50 cents per 100 pounds; that after plaintiffs began their operations, defendant successively cut its prices while plaintiffs' prices were unchanged; and that all of this price cutting was done for the purpose of destroying competition and eliminating plaintiffs as competitors.

The defendant answered, insisting that all of the matters complained of were in intrastate commerce and local in character, and that none of the matters complained of were in violation of the invoked act.

In addition, denying that it had cut prices to destroy competition, it alleged that, on the contrary, it had done so to meet and preserve competition.

Plaintiffs thereupon amended their complaint to allege also that "the defendant has attempted to monopolize part of the trade and commerce among the several states in violation of Sec. 2 of the Sherman Antitrust Act [15 U.S.C.A. § 2]", and that "in violation of the Robinson-Patman Act, and in the course of interstate commerce and

for the purpose of destroying competition and eliminating competitors in the course of said commerce, the defendant has sold ice in Bainbridge and Colquitt, Georgia, at prices lower than those exacted by said defendant elsewhere in the United States".

Defendant, on the ground that none of the sales complained of here were in, or in the course of, interstate commerce, but all were local and intrastate, and that defendant had not attempted to monopolize any part of the trade or commerce among the several states, moved for summary judgment, and in due course there came on for hearing, on affidavits,[1] before the district judge, defendant's motion for summary judgment and plaintiffs' application for interlocutory injunction.

The district judge denied defendant's motion for summary judgment and also denied plaintiffs all the relief they sought with respect to cold storage and the curing and storage of meats, and defendant appealed from the order denying summary judgment.

■ Of the opinion, however: that the proof showed that the price cutting was entered upon for the purpose of destroying competition and eliminating plaintiffs as competitors; and "further that the sale of ice to truckers and railroads to transport perishable goods into other states constitutes a part of interstate commerce"; and that, though the total of such sales was less than one-percent of the total business involved in the local price war, the sale of ice as disclosed to the court was an integral part of interstate commerce, and imposed a substantial burden upon such commerce, entitling plaintiffs to the injunction prayed; the judge granted an interlocutory injunction;[2] and defendant has appealed from that order.

1. Affidavits were offered by both sides on the general issue of price cutting and the reasons for, and effects of, it. Plaintiffs' affidavits tended to support their theory that the price cuttings were unfair and for the purpose of driving them out of business. Defendant's tended to support their theory: that they were necessary to meet competition offered by plaintiffs; that the effect of the price cutting had been wholesome and beneficial to the public, in reduced prices, and to both plaintiffs and defendant, increasing the business of each without hurting the business of any.

In addition, plaintiffs, to prove that some at least of the sales at the cut prices complained of were actually in, or in the course of, interstate commerce, offered affidavits to show that some ice sold by defendant to truckers, railroads, and others, was used in icing interstate shipments.

Defendant, to support its contention that none of its sales of ice were made in interstate commerce, offered affidavits tending to prove: that the ice sold to truckers and railroad companies was not sold for a specific use in interstate commerce or otherwise, but generally as local sales as its sales were made to all of its other customers; that it has no icing equipment at Bainbridge, where the claimed interstate sales were made, and any ice that it sold to truckers or railroads was sold in blocks of the same general character as those sold to others; and that if any ice bought from defendant was, or is being, used to ice shipments moving in interstate commerce, this was, and is being done not by defendant but by the customers after, and not as a part of defendant's sale of the ice to them.

In addition, in support of its contention that if it sold any ice in interstate commerce, it was an amount too small to be significant, the defendant offered affidavits showing separately its total sales of ice and the total sales to truckers of ice claimed to have been used for icing shipment, and that the latter is only a little more than one-half of one percent of the former. Its contention here was that if this ice, though sold locally in blocks, as its other ice was sold, could be said to have been sold in interstate commerce, it was such an insignificant part of the business done that it would not support a finding that the price cutting was for the purpose of destroying competition and eliminating competitors in the course of, and of monopolizing interstate commerce.

2. "The defendant is hereby restrained and enjoined from charging any less or lower prices for ice in its Bainbridge and Colquitt divisions than the average prices charged for similar ice at Arlington, Dawson, Americus, Albany and Sylvester, provided, however, that the defendant shall not be required by the terms of this interlocutory injunction to charge more than the prices charged by its competitors at Bainbridge and Colquitt, nor

With the appeal from the order denying the motion for summary judgment, we need not concern ourselves. The order is interlocutory and not appealable. The only matter for our consideration, therefore, is whether the order granting the interlocutory injunction should be affirmed.

Appellant, insisting that it should not be affirmed, challenges not only the correctness of the findings, that the price war was one to stifle competition and gain control of the market, and that some of the sales complained of were in interstate commerce, but also the conclusion that plaintiffs should have an injunction, not only with respect to the interstate sales but also with respect to those which were admittedly intrastate. It points to the undisputed facts: that the price war was a local one, that is, that all but an insignificant part of the sales were undisputedly made to local customers and intrastate; and that if any of the sales to the truckers and the railroads could, though made locally, be said to be in, or in the course of, interstate commerce, they were completely insignificant when compared to the total business done in the two towns.

So pointing, it insists that, conceding that the evidence supported the finding of the district judge, that the price war was for the purpose of eliminating plaintiffs as competitors, it could not, in fact or in law, have been reasonably found that it was begun and carried on by appellant with the intent or effect of monopolizing interstate commerce, in violation of the Sherman Act, or of destroying competition and eliminating competitors in the course of interstate commerce, in violation of the Robinson-Patman Act.

Appellees, on their part, pointing to the conflicting affidavits as to whether the purpose and effect of the price cutting was malign or benign, insist that for the purpose of this appeal the court must accept the finding of the district judge, that the purpose and effect was malign, and unless his conclusions, that an injunction should issue, are unsupported in law, the order appealed from must be affirmed.

We agree with appellees that this is so. We accept the finding that the purpose of the price war was to suppress competition by injuriously affecting plaintiffs as competitors.

We turn to the determination of whether the legal conclusions on which the issuance of the injunction was based: (1) that the sales to truckers and railroads constituted, or were in the course of, interstate commerce; (2) that not merely the sales found to be in interstate commerce but the local sales as well are an integral part thereof; and (3) that an injunction should, therefore, issue to restrain the price cutting not only as to the few sales found to have been in interstate commerce but also as to all the intrastate sales.

Upon these points appellant and appellees wage furious verbal war.

Appellees, citing many cases, urge[3] upon us that the sales to truckers and railroads,

in any event more than the prices prevailing at Bainbridge and Colquitt prior to the time competition occurred, to-wit: 40¢ per hundred pounds at the platform and 50¢ per hundred pounds delivered at Bainbridge; 40¢ per hundred pounds at the platform; and 60¢ per hundred pounds delivered at Colquitt."

3. For the comprehensive reach and scope of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note: U. S. v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726; Local No. 167 v. U. S., 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; U. S. v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 69 S.Ct. 714; U. S. v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951; Eastern States Retail Lumber Dealers' Ass'n v. U. S., 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; U. S. v. Rock Royal Co-operative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; U. S. v. Darby, 312 U.S. 100 at 122, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Bethlehem Steel Corp. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234;

That ice sales to truckers were in interstate commerce: Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165; Fleming v. Atlantic Co., D.C., 40 F.Supp. 654; and Gordon v. Paducah Ice Mfg. Co., D.C., 41 F.Supp. 980.

And on the point that the smallness of the amount of interstate commerce is immaterial: Steers v. U. S., 6 Cir., 192 F. 1.

though local, were in interstate commerce, and since restraints upon the price war could not be effective if limited to the sales in interstate commerce, it was competent for the court, in relieving from the effects of the price cutting, to find that, for the purposes of this case, the intrastate sales were an integral part of interstate commerce and to enjoin price cutting not only in respect of the few sales found to be interstate commerce but in respect to the intrastate sales as well.

Appellant does not at all disagree with the holdings of the authorities cited. But, citing cases in support of its views, it urges that to apply appellees' cases here is to misapply them because, first the so-called interstate sales are not interstate but local,[4] and, second, assuming without admitting that these few sales can be said to have been in the course of interstate commerce, it would be running a good principle into the ground, Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, at 539, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280,

to hold that the purpose and effect of defendant's actions in this small and local price war was to monopolize commerce under the Sherman Act or to cut prices in the course of such commerce under the Robinson-Patman Act.[5]

It may not any longer be doubted that the power of Congress and the scope of the Sherman Act's coverage "extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce." [6] It remains true, however: that the distinction between intrastate and interstate commerce still exists; that "it is the effect upon the interstate commerce or its regulation, regardless of the particular form which the competition may take, which is the test of federal power" ; [7] and that the question of whether the effect on interstate commerce is substantial is still a determining one.[8]

4. In support of its view, that the mere fact that some of the ice it sold was later used in icing shipments in interstate commerce, does not constitute proof that the sales were made in or in the course of commerce; it cites: Jarrett v. Pittsburgh Plate Glass Co., 5 Cir., 131 F.2d 674; Boro Hall Corp. v. General Motors Corp., 2 Cir., 124 F.2d 822; Dept. of Treasury of Indiana v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1118; Eastern Air Transport, Inc., v. South Carolina Tax Commission, 285 U.S. 147, 52 S.Ct. 340, 76 L.Ed. 673; Superior Oil Co. v. Mississippi, 280 U.S. 390, 50 S. Ct. 169, 74 L.Ed. 504; Puget Sound Stevedoring Co. v. State of Tax Comm., 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68.

5. In support of its view; that even though these sales were interstate, their quantity is so small as to be negligible; that the evidence taken as a whole does not support a finding that the price war complained of fell within the prohibition of the invoked statutes as a restraint upon, or monopoly of, interstate commerce, but that, on the contrary, it was an attempt at restraints upon a monopoly of a local business or local service; and that, if the aim of the plan or conduct was to accomplish a local objection and not for the purpose of restraining inter-

state trade or commerce, the anti-trust acts do not apply, although interstate commerce may be incidentally affected, it cites: United Leather Workers v. Herkert & Meisel Trunk Co., 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Industrial Ass'n of San Francisco v. U. S., 268 U.S. 64, 45 S.Ct. 403, 69 L. Ed. 849; Lipson v. Socony Vacuum Corp., 1 Cir., 87 F.2d 265; U. S. v. Yellow Cab, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010; U. S. v. Columbia Steel, 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533; and Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S. Ct. 996, 92 L.Ed. 1328.

6. U. S. v. Wrightwood Dairy Co., 315 U. S. at 119, 62 S.Ct. at 526, 86 L.Ed. 726; Wickard v. Filburn, 317 U.S. 111, 63 S. Ct. 82, 87 L.Ed. 122; Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328.

7. U. S. v. Wrightwood Dairy Co., 315 U.S. at 120, 62 S.Ct. at 526, 86 L.Ed. 726.

8. Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. at 234, 68 S. Ct. at 1005, 92 L.Ed. 1328; U. S. v. Frankfort Distilleries, 324 U.S. at 297, 65 S.Ct. at 663, 89 L.Ed. 951, where it is said: "It is true that this court has on occasion

■ A consideration of the record in this case, with these considerations in mind, leaves us in no doubt that the evidence is not sufficient to support the conclusion on which the injunction was based, that in doing the acts complained of, the defendant was, in violation of the Sherman Act, attempting to monopolize a part of the trade or commerce among the several states, and, of the Robinson-Patman Act, cutting prices for the purpose of destroying competition and eliminating plaintiffs as competitors in the course of said commerce.

We think it perfectly clear: that what, and all, that is made to appear is a war of local price cuttings; that its effect, if any, upon interstate commerce is insubstantial, inconsequential, and remote; · and that the finding, that the price cutting was done to impose restraints on, or that it substantially affected interstate commerce, is without support in the evidence.

The order granting the interlocutory injunction is reversed and the cause is remanded for further and not inconsistent proceedings.

determined that local conduct could be insulated from the operation of the Anti-Trust Laws on the basis of the purely local aims of a combination, insofar as those aims were not motivated by the purpose of restraining commerce, and where the

means used to achieve the purpose did not directly touch upon interstate commerce."