## MOORE v. MEAD SERVICE CO. et al.

No. 4055.

United States Court of Appeals
Tenth Circuit.

July 28, 1950.

Rehearing Denied Sept. 28, 1950.

Dee C. Blythe, Clovis, N. M., for appellant.

Edward W. Napier, Wichita Falls, Tex. (Howard F. Houk, Santa Fe, N. M., on the brief) for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff brought this action to recover statutory treble damages alleged to have been incurred by reason of defendants' violation of the Clayton Act, as amended by the Robinson-Patman Price Discrimination Act of 1936, 15 U.S.C.A. § 13(a). At the conclusion of plaintiff's evidence, the trial court dismissed the complaint and entered judgment for the defendants. This appeal is from that judgment.

The plaintiff operated the only bakery in the town of Santa Rosa, New Mexico. At the same time the defendant, Mead's Fine Bread Company, a corporation, had a similar business in Clovis, New Mexico, and was selling its product in Santa Rosa through substantially the same outlets as the plaintiff. It had other outlets across the state line in Texas. The plaintiff concluded that there was insufficient business in Santa Rosa to maintain his bakery there and decided to move to another city. A group of business men, desiring to keep the plaintiff and his business in their city, inquired of him what would be necessary to prevent the move. The plaintiff advised them that he would retain his bakery there provided the retail outlets of that city would purchase bread only from him. All of the retail outlets except one small retailer signed a petition wherein it was agreed that they would not purchase bread from anyone except the plaintiff. The plaintiff took no part in the circulation of the petition, but he had knowledge of it and expressed a willingness to accept its benefits. It was obtained to meet his requirements for remaining in Santa Rosa. The plaintiff met with the retailers and it was determined that the agreement was to become effective on September 3, 1948. At that time sliced white bread was selling at 14 cents per one pound loaf and 21 cents per one and one-half pound loaf. On the date that the agreement was to go into effect, the defendants reduced the price of their bread in Santa Rosa, and at no other place, to 7 cents for the one pound loaf and 11 cents for the one and one-half pound loaf. As a result of the reduction most of the retailers resumed the sale of defendants' bread. Plaintiff contends that this reduction in Santa Rosa only was a price discrimination prohibited by 13(a) of the aforesaid Act and that he was damaged thereby.

The declared policy of the Sherman Anti-Trust Act and the Clayton Act as amended by the Robinson-Patman Act,[1] is to prevent monopolies and the stifling of competition. Section 14 makes it unlawful for any person engaged in interstate commerce to "make a sale or contract for sale of goods * * * on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods * * * of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." Here the admitted purpose of the agreement between the retailers was to eliminate all competition for the sale of bread in Santa Rosa and give to the plaintiff a complete monopoly in that business there. Had the plaintiff

1. 15 U.S.C.A. § 1 et seq.

been engaged in interstate commerce, the combination would have been in violation of the foregoing section. The New Mexico statute declares illegal all contracts and combinations between individuals, associations or corporations "having for its object or which shall operate to restrict trade or commerce or control the quantity, price or exchange of any article of manufacture" and provides a criminal penalty for those who shall monopolize or attempt to monopolize or combine or conspire with other persons to monopolize any part of the trade or commerce of the State of New Mexico (New Mexico Statutes 1941, §§ 51-1101, 1102). Clearly the boycott of the defendants restricts free competition and restrains trade. It is against the declared policy of the United States. U. S. v. Griffith, 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236. It is in violation of the statutes of New Mexico. State v. Gurley, 25 N.M. 233, 180 P. 288, 290; 36 Am.Jur., Sec. 502. Admittedly the action of the plaintiff and the retailers brought on the price reductions complained of.

■ The anti-trust statutes were enacted to protect the public by promoting free competition and preventing undue restriction of trade and commerce by price discrimination. Maltz v. Sax, 7 Cir., 134 F.2d 2, 4, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 138 F.2d 967, 970; Thomson Mfg. Co. v. Federal Trade Commission, 1 Cir., 150 F.2d 952, certiorari denied 326 U.S. 776, 66 S.Ct. 267, 90 L.Ed. 469. The Act, 15 U.S.C.A. § 15, provides that one injured in his business or property by reason of anything forbidden in the anti-trust laws may sue and recover three fold the damages sustained. The obvious purpose of Sec. 15 was to broaden the scope of relief

under the Act and to supplement the enforcement agencies. U. S. v. National City Lines, 334 U.S. 573, 581, 68 S.Ct. 1169, 92 L.Ed. 1584. Maltz v. Sax, supra. Here plaintiff's alleged damages were the direct result of an unlawful combination designed to stifle competition and create a monopoly the very thing which the Act seeks to prevent. Plaintiff was a party to this combination.

■ Assuming that the defendants were in violation of the price discrimination Act, we hold that the plaintiff having participated in an illegal undertaking which resulted in his alleged damages he cannot recover.[2] This is not so much the application of the equitable doctrine of "unclean hands" as it is a holding that the plaintiff was actually in pari delicto.

Although it is not necessary to a decision in the case, a consideration of the record indicates that it is extremely doubtful whether the discriminations complained of come within the provisions of the Robinson-Patman Act. The parties to the action were manufacturers of bread in New Mexico and the discrimination took place within that state. The only interstate features were that the defendants made some sales in Texas which were unaffected by the discriminations. It seems clear that we have nothing more than a local price cutting war having no affect or impact upon interstate commerce and placing no burden upon the same. The subject is fully discussed by the Fifth Circuit in Atlantic Co. v. Citizens Ice and Cold Storage Co., 178 F.2d 453, certiorari denied 339 U.S. 953, 70 S.Ct. 841. See also Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468; Lewis v. Shell Oil Co., Ill., D.C., 50 F.Supp. 547.

Judgment is affirmed.

2. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492, 62 S.Ct. 402, 86 L.Ed. 363; Keystone Driller Co. v. Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293; Continental Wall Paper Co. v. Voight & Sons, 212 U.S. 227, 261, 29 S. Ct. 280, 53 L.Ed. 486; McMullen v. Hoffman, 174 U.S. 639, 654, 19 S.Ct. 839, 43 L.Ed. 1117; Embry v. Jemison, 131 U.S. 336, 349, 9 S.Ct. 776, 33 L.Ed. 172; Higgins v. McCrea, 116 U.S. 671, 686, 6 S. Ct. 557, 29 L.Ed. 764; Standard Oil Co. v. Clark, 2 Cir., 163 F.2d 917, 926; Ring v. Spina, 2 Cir., 148 F.2d 647, 653; Northwestern Oil Co. v. Socony-Vacuum Oil Co., supra; Maltz v. Sax, supra; Levy v. Kansas City, Kan., 8 Cir., 168 F. 524, 22 L.R.A.,N.S., 862.

MURRAH, Circuit Judge (specially concurring).

I concur in the affirmance of the trial court's judgment solely on the ground that the harm, of which appellant complains, was brought about by his own illegal acts, or those to which he was privy. While I cannot agree that, strictly speaking, appellant was in pari delicto, I do not believe that the aims and purposes of the anti trust laws, and particularly Section 15, would be served by allowing him to benefit by his own wrong.

If the acts complained of constitute an actionable wrong under the anti trust laws, it is in the nature of a public wrong, private redress for which is granted under Section 15 only as an aid to the enforcement of the public policy embodied in the Act. The private remedy granted under Section 15 is not exclusive, it is only ancillary. The primary responsibility for the enforcement of the Act is committed to the Government, through its delegated agencies. The Federal Trade Commission is empowered to initiate appropriate proceedings under Section 11 of the Clayton Act, 15 U.S.C.A. § 21, and expeditiously grant cease and desist orders enforceable in the courts; the United States Attorney, with jurisdiction where the wrong occurred, is empowered to invoke the injunctive processes of the courts for both temporary and permanent relief under Section 15 of the Clayton Act, 15 U.S.C.A. § 25; or, he may invoke the criminal penalties under Section 3 of the Robinson-Patman Act, 49 Stat. 1528, 15 U.S.C.A. § 13a. See Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320. In all events, the redress is for the benefit of the public, which is wronged—not he who initiated it.

Having decided that this suit is not maintainable by the appellant, I deem it unnecessary and inappropriate to decide the question whether the acts complained of may be said to be in the course of, and affect interstate commerce within the meaning of Section 13(a). On that question I reserve my judgment for another day.