**MOORE v. MEAD SERVICE CO. et al.**

No. 4055.

United States Court of Appeals
Tenth Circuit.

June 26, 1951.

Rehearing Denied July 27, 1951.

Dee C. Blythe, Clovis, N. M., for appellant.

Edward W. Napier, Lubbock, Tex. (Howard F. Houk, Santa Fe, N. M., was with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought to recover statutory treble damages alleged to have been incurred by reason of the defendant's violation of the Clayton Act as amended by the Robinson-Patman Price Discrimination

Act of 1936, 15 U.S.C.A. §§ 13(a), 15. At the conclusion of plaintiff's evidence, the trial court dismissed the complaint and entered judgment for the defendant for the reason that the evidence showed that the alleged price discrimination was in response to changing conditions affecting the market for or the marketability of goods concerned which was permitted under the last proviso of Sec. 13(a). Upon former consideration of the case, we affirmed upon the grounds that the plaintiff, by his own conduct and participation in an illegal boycott, had created a condition which resulted in the price discrimination complained of and for that reason could not maintain the action. 10 Cir., 184 F.2d 338. Upon petition for certiorari, 340 U.S. 944, 71 S.Ct. 528, the Supreme Court remanded the case with directions that it be given further consideration in the light of Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259. Although the facts in the Kiefer case were substantially different from those here, it was there held that in an action for treble damages under the Sherman Act, 15 U.S.C.A. §§ 1, 15, infractions of such law by the claimant were not a defense in such an action. We therefore conclude that the Kiefer case controls on this point.

Moore operated the only bakery in the town of Santa Rosa, New Mexico. At the same time, Mead's Fine Bread Company, a corporation, had a similar business in Clovis, New Mexico, and was selling its product in Santa Rosa in competition with Moore and through substantially the same outlets. By selling its product through other outlets across the state line in Texas, it was engaged in interstate commerce. In order to retain Moore's bakery in Santa Rosa, with the consent and acceptance of Moore, a group of business men there obtained the written assurance from all of the retail outlets, except one, that they would not purchase bread from anyone except Moore. This understanding was to become effective on September 3, 1948. Upon that date Mead reduced the price of a one pound loaf of white bread from 14¢ to 7¢ and a one and one-half pound loaf

from 21¢ to 11¢ which was substantially below cost. As a result of this reduction, most of the retailers continued the sale of Mead's bread. Mead did not reduce the price of its product at any place except Santa Rosa, and maintained these prices until after this action was brought.

The Act makes it unlawful for a person engaged in interstate commerce, either directly or indirectly, to discriminate in price between purchases of commodities of like grade and quality where such commodities are sold for use, consumption or resale and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce or to injure, destroy or prevent competition with any person who either grants or knowingly receives benefit of such discrimination. The section contains this proviso: "nothing contained in sections 12, 13, 14–21 and 22–27 of this title shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned." The trial court thought that because of the boycott, Mead was confronted with a changed market condition which would bring it within this proviso. It appears to us that the proviso cannot be given such a broad meaning. It is evident that it deals with special situations in connection with specific lots of goods which are of a perishable nature or become obsolete with the seasons or distress sales under court process or goods sold when a business is discontinued in good faith. The exceptions are not confined specifically to those set forth but the plain language of the statute limits the exceptions to those which are "such as" or similar to those named. The changed market condition caused by the understanding of the retailers in Santa Rosa to purchase only Moore's bread is

542

not "such as" or similar to the exceptions named.

■ A price discrimination having been shown, it then, under the statute, becomes a question of fact as to whether "the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with the customers of either of them." 15 U.S.C.A. § 13(a).

Judgment is reversed and the cause remanded for new trial.

PHILLIPS, Chief Judge (specially concurring).

Still entertaining doubt, for the reasons expressed in our first opinion, that the discriminations complained of come within the provisions of the Robinson-Patman Act, I concur in the opinion as far as it goes. However, I think it leaves at large an important question which should be decided.

Mead Service Company and Mead's Fine Bread Company, hereinafter referred to as Mead, were confronted with a boycott at Santa Rosa, New Mexico, which entirely deprived them of a market for their bread at that point. The boycott gave Moore a complete monopoly of the bread business in Santa Rosa. Mead had the alternative of giving up its bread business at Santa Rosa or reducing its prices in an effort to break the boycott and regain its market.

Section 15 U.S.C.A. § 13(b) provides: "Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing contained in sections 12, 13, 14–21, and 22–27 of this title shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

It is true that Mead offered and sold bread at Santa Rosa at a lower price than it offered and sold bread at other markets. My brother Murrah is of the opinion that because of the proviso in the quoted section a justification for a discriminatory price can only be shown by proof that the lower price "was made in good faith to meet an equally low price of a competitor." It seems obvious to me that had such been the intent of Congress it would not have used the general language, "unless justification shall be affirmatively shown," but would have stated, "unless the defendant justifies his lower price by showing it was made in good faith to meet an equally low price of a competitor." I think the context clearly shows the intent and purpose of the proviso. It was not to limit the grounds of justification, but rather, it was to eliminate any doubt that might arise because of the provisions of Sections 12, 13, 14–21 and 22–27, that the defendant could justify by showing that the lower price was made in good faith to meet an equally low price of a competitor.

Meeting Moore's price here would have been wholly ineffectual. He had a monopoly, not by reason of price, but by reason of a boycott agreement. Mead met the boycott confronting it, in the only effective way it could. I think Mead should be permitted to justify by showing it reduced its price in good faith solely to break the boycott and not to destroy competition or to create a monopoly. Of course, if Mead carried its price cutting to a degree that would destroy competition and obtained a monopoly by it, or if it cut the price of bread with an intent and purpose so to do, it would not be justified.

If we deny Mead the right to justify in this case by showing it acted in good faith, solely to break a boycott, the statute, in-

stead of fostering competition and preventing monopoly, will become an instrument to destroy competition and foster monopoly. Such, in my opinion, was not the intent and purpose of Congress.