**MEAD'S FINE BREAD CO.**
v.
**MOORE.**

No. 4615.

United States Court of Appeals
Tenth Circuit.

Dec. 11, 1953.

Rehearing Denied Jan. 16, 1954.

Edward W. Napier, Lubbock, Tex. (Howard F. Houk, Santa Fe, N. M., was with him on the brief), for appellant.

Dee C. Blythe and Lynell G. Skarda, Clovis, N. M., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a verdict and judgment in favor of the plaintiff-appellee in an action for treble damages under the Robinson-Patman Amendment to the Clayton Act, 15 U.S.C.A. §§ 13(a), 13a and 15. When the case was first here, Moore v. Mead Service Co., 10 Cir., 184 F.2d 338, on appeal from a judgment of the trial court dismissing the action, we affirmed on the ground that the suit was precluded by the plaintiff's own illegal acts which initiated the alleged price discrimination. On certiorari to the Supreme Court, the case was vacated for reconsideration in the light of Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219, in which it was held that an action under Section 15 of the anti-trust laws was not precluded by the claimant's infractions.

On further consideration, we receded from our former position, and looking at the facts of record, pointed out that by selling its products through outlets across the state line in Texas, Mead was engaged in interstate commerce, and by selling bread in Santa Rosa, New Mexico, below cost, it discriminated against its competitor plaintiff-appellee. Price discrimination and interstate commerce having been shown, we left open the question whether the effect of such discrimination might tend to substantially lessen competition or create a monopoly in any line of commerce, or injure, destroy or prevent competition with Mead or its customers. The case was accordingly reversed and remanded for the determination of that fact. See Moore v. Mead Service Co., 10 Cir., 190 F.2d 540. But in leaving the case to the undetermined facts, we did not thereby intend to hold or imply that the mere fact of interstate commerce and local price discrimination, standing alone, made out a prima facie case for the plaintiff. Indeed, on first consideration, doubt was expressed whether the purely local price-cutting war had any actionable effect or impact upon interstate commerce. See 10 Cir., 184 F.2d 338, 340.

Recognizing the necessity of proof on this crucial issue, the trial court charged the jury, substantially in the language of the statute, that it was incumbent upon the plaintiff to establish by a preponderance of the evidence that the defendant, while engaged in interstate commerce, and in the course of such commerce, either directly or indirectly, discriminated in price between different purchasers of its products, sold for use, consumption or resale in Santa Rosa, and that the effect of such discrimination might substantially lessen competition or tend to create a monopoly in such line of commerce, see Section 2(a) of the Clayton Act, as amended, 49 Stat. 1526, 15 U.S.C.A. § 13(a); or that the defendant, while engaged in interstate

commerce, and in the course of such commerce, sold goods at Santa Rosa, at prices lower than those exacted by defendant elsewhere in the United States for the purpose of destroying competition or eliminating a competitor in Santa Rosa, or to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor. Section 3, 49 Stat. 1528, 15 U.S.C.A. § 13a. It was on these pertinent instructions that the jury found for the plaintiff and assessed his damages at $19,000, which the trial court tripled and entered judgment accordingly, together with attorney fees in the sum of $11,400.

██ The first of the statutory instructions is the embodiment of the now accepted view that purely local transactions in the form of price fixing or discrimination come within the ban of the anti-trust laws, when such transactions may have the effect of interfering with the free flow of competitive trade and commerce. Swift & Co. v. U. S., 196 U.S. 375, 25 S.Ct. 276, 49 S.Ct. 518; Shreveport Rate Cases, Houston, E. & W. T. R. Co. v. U. S., 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122; Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. The latter part of the court's instructions in the disjunctive is the embodiment of the equally accepted complementary view that interstate commerce powers, when exerted to their fullest under the anti-trust laws, forbid the utilization of interstate commerce for the purpose of monopolizing local trade or business, whether through price fixing or other discriminatory practices. Stevens Co. v. Foster & Kleiser Co., 311 U.S. 255, 61 S.Ct. 210, 85 L.Ed. 173; Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239. Local price fixing or discrimination is within the

anti-trust laws if the means adopted for its accomplishment reach beyond the boundaries of one state. United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951. And, since the design of the Robinson-Patman Amendment was to pinpoint protection of the anti-trust laws "to the competitor victimized by the discrimination", the victim may maintain an action for damages without showing that the competitive injury was general in its scope and effect. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 49, 68 S. Ct. 822, 830, 92 L.Ed. 1196; Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320. But, whether the claim is asserted under the Sherman Act, 15 U. S.C.A. §§ 1–7, 15 note, or the Clayton Act, as amended, 15 U.S.C.A. § 12 et seq., the wrongs complained of must involve interstate commerce, either in "effect" or "purpose", for obviously, the acts can have no greater potency than the commerce clause itself.

██ Local conduct which is separable and unrelated to interstate commerce is necessarily insulated from the operation of the anti-trust laws, and so, in making application of the Clayton Act, as amended, to local purchases and sales, it is important to keep in mind the "obvious distinction to be drawn between a course of conduct wholly within a state and conduct which is an inseparable element of a larger program dependent for its success upon activity which affects commerce between the states." United States v. Frankfort Distilleries, Inc., supra, 324 U.S. at page 297, 65 S.Ct. at page 663. " * * * It is the effect upon the interstate commerce or its regulation, regardless of the particular form which the competition may take, which is the test of federal power." United States v. Wrightwood Dairy Co., 315 U. S. 110, 120, 62 S.Ct. 523, 526, 86 L.Ed. 726.

At least part of the time during which it was selling bread in Santa Rosa, Mead was also selling bread across state lines to outlets in Texas. And, it discrimi-

nated in price between the purchases of bread in Santa Rosa and those made in Texas, so that at least some of the purchases involved in the discrimination were in commerce. But there is positively no evidence that the discriminatory sales had even the probable effect of lessening competition or tended to create a monopoly in any line of commerce, or to destroy or prevent competition with Mead at any place except Santa Rosa, New Mexico, or any of its customers at any place in the United States except Santa Rosa. The sales made at Santa Rosa were to purchasers for resale locally. The competitive injury resulting from the sale was to a purely local competitor whose business was in no way related to interstate commerce. If competition was lessened or a monopoly created, it was purely local in its scope and effect and in no way related to or affected interstate commerce. The suppressive effect of the discriminatory sales on competition at Santa Rosa, reprehensible as they may have been, did not reach beyond the jurisdiction of New Mexico and cannot therefore be found to be within the "effect" provisions of § 13(a) of the Clayton Act, as amended.

Our case is not like Mandeville Farms v. American Crystal Sugar Co., supra, where local price fixing of sugar beets adversely affected the interstate sale and distribution of refined sugar. Nor is it like Corn Products Refining Co. v. Federal Trade Commission, supra, where the discriminatory sales of commodities were made to purchasers competing in interstate commerce. Nor is it comparable to George Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 49 S.Ct. 112, 73 L.Ed. 31, where both of the competing purchasers were engaged in interstate commerce.

■ Undoubtedly Mead sold bread in one part of the United States, to-wit, Santa Rosa, at prices lower than those exacted by it elsewhere in the United States, to-wit, Farwell, Texas, and the lower price at Santa Rosa may be said to have been made for the "purpose of destroying competition or eliminating a competitor" at Santa Rosa. The facts thus read upon the literal language of the statute. But the statute must be kept within the constitutional power of Congress to regulate commerce. It follows then, to be constitutionally actionable under § 13a, interstate commerce must be monopolized or utilized to effectuate the objective. In other words, the means employed for the elimination of the purely local competitor must, in some effective way, reach beyond state boundaries. In that respect, our case is different from United States v. Frankfort Distilleries, supra, where interstate commerce was monopolized to effect a local objective; or Standard Oil Co. v. Federal Trade Commission, supra, where discriminatory sales were made interstate to local competitors. See also Federal Trade Commission v. Morton Salt Co., supra. In those cases, interstate commerce was the forbidden means for the achievement of the local purpose. Here, although Mead was engaged in commerce, the sales made in the course of such commerce were not the means for the elimination of the local competitor. The means for the achievement of the local purpose did not extend beyond state lines.

■ The evidence showed that some of the stockholders and officers of the Mead Bakery at Clovis, New Mexico, were also stockholders and officers of other bakeries in New Mexico and Texas; that all of such bakeries produced and sold bread under the same label and that the labelled wrappers were purchased from the same source. They conducted their advertising campaigns through a common agency which billed each bakery for the amount of advertising used. It was also shown that in many instances, flour for the bakeries was purchased in Texas from a common source and sometimes in common lots. Appellee relies upon this interlocking arrangement to show an interstate corporate structure and activity. But there is nothing in this record to show that the interlocking corporate ownership and management or other business relation-

ships were utilized or were in any way related to the local price war in Santa Rosa. There is nothing to show that bread was shipped from the Texas bakeries to the New Mexico bakeries, or for that matter, from one New Mexico bakery to another, or any other exchange of commodities which might be said to lend an interstate character to otherwise purely local transactions.

Our case is indistinguishably similar to Atlantic Co. v. Citizens Ice & Cold Storage Co., 5 Cir., 178 F.2d 453, where the offending competitor, while engaged in commerce, discriminated in price against a purely local competitor. The court held that the local price war had no substantial effect upon interstate commerce and was therefore not within the scope of either the Sherman or Clayton Acts. We agree that the purely local price-cutting war did not affect any line of commerce, nor did the means of its effectuation actionably involve commerce.

The judgment is accordingly reversed with directions to dismiss the action.