PENNSYLVANIA WATER & POWER CO. et al. v. CONSOLIDATED GAS, ELECTRIC LIGHT & POWER CO. of Baltimore, Maryland, et al.

No. 6102.

United States Court of Appeals Fourth Circuit.

Argued Jan. 6, 1951.

Decided Jan. 10, 1951.

Wilkie Bushby, New York City, and Charles E. Thomas, Harrisburg, Pa. (James Piper, R Dorsey Watkins, Baltimore, Md., William J. Grove and Lloyd Benjamin, Harrisburg, Pa., on brief), for appellants.

Alfred P. Ramsey, Harry N. Baetjer and Charles D. Harris, all of Baltimore, Md. (G. Kenneth Reiblich, Norwood B. Orrick and John Henry Lewin, all of Baltimore, Md., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

By a decision rendered upon the appeal in this case on September 30, 1950, 4 Cir., 184 F.2d 552, we reversed the judgment of the District Court, 89 F.Supp. 452, and held that an agreement for the sale and delivery of electric energy by Pennsylvania Water and Power Company, a Pennsylvania corporation, to Consolidated Gas, Electric Light & Power Company of Baltimore, a Maryland corporation, is invalid in that it violates the federal anti-trust laws and is contrary to the public policy and laws of Pennsylvania; and the case was remanded to the District Court to enter a declaratory judgment in accordance with our opinion. Thereafter a controversy arose in the District Court as to whether the invalidation of the agreement revived an earlier agreement between the parties for the interstate sale and delivery of electric energy and entitled Consolidated to continued deliveries by Penn Water, in accordance with the terms set forth therein; and by motion of Penn Water we were asked to interpret the mandate of this court and settle the controversy. The matter was accordingly set for hearing, briefs were filed and counsel for the parties were heard at length.

The invalid agreement, which has been called the "basic agreement" throughout this litigation was executed on June 1, 1931. In effect it superseded an earlier agreement of December 31, 1927 for the sale of electric energy from January 1, 1927 to December 31, 1970, which Consolidated now desires to reinstate. There were in fact four agreements in this series between the parties as follows: Agreement of December 31, 1927; Supplemental Agreement of December 27, 1928; Supplemental Agreement of June 1, 1931; and Supplemental Agreement of September 29, 1939. Little need be said of the agreement of December 27, 1928 and the agreement of September 29, 1939, since they have no bearing on the point in issue. The agreement of December 27, 1928 transferred title to nine cables in Baltimore City from Penn Water to Consolidated in consideration of the payment of $105,000. This transaction was finally settled and closed and there is no attack upon its legality. The agreement of September 29, 1939, which was made at the request of the Public Service Commission of Maryland, reduced by $600,000 the annual payments of Consolidated to Penn Water under the 1931 agreement, as well as the amounts to be paid by Consolidated with respect to plant additions by Penn Water after December 31, 1938. There is no controversy about these provisions and the agreement throws no light upon the matter in dispute.

Attention may therefore be confined to the 1927 and 1931 agreements. The 1931 agreement is spoken of as supplemental to that of 1927, but in fact the later agreement took the place of the earlier one so completely that it has governed the relations between the parties for the past twenty years and has been uniformly considered and called herein the "basic agreement" between the parties. It is of great significance that prior to the decision of this court on appeal and the refusal of certiorari by the Supreme Court 340 U.S. 906,

71 S.Ct. 282, it never occurred to any one to suggest that if the 1931 agreement were stricken down, the 1927 agreement would spring into life. Indeed the opposite assumption has been made. Heretofore Consolidated at no time made the contention that even if the 1931 contract were invalidated the 1927 agreement would remain in effect; and no such contention was made in the District Court, as appears from the concluding paragraph of its opinion where it was suggested that the invalidation of the basic agreement would enable Penn Water to withdraw completely from the interstate transportation and sale of electric energy.

It is obvious that this common assumption of the parties rather than the afterthought of Consolidated presents the true situation prevailing between the parties and the only reasonable answer to the question before the court. A comparison of the provisions of the two agreements clearly shows the correctness of this conclusion, because the 1931 agreement made such fundamental changes that thereafter it completely dominated the interparty transactions. In 1927 Penn Water agreed to sell approximately 400,000,000 kwh of 25 cycle electricity annually to Consolidated until 1970, and Consolidated agreed to pay for it on a unit rate basis. It was an ordinary utility contract for the supply of capacity and energy on a unit rate basis and placed no restrictions on Penn Water's operations.

The 1931 agreement, on the other hand, provided that Consolidated should be entitled to all the electric capacity and energy available to Penn Water and not otherwise disposed of in the performance of existing contracts, and in consideration thereof, Consolidated agreed to pay Penn Water an amount equal to its operating expenses, a specified rate of return on existing facilities, and on the cost of new facilities less depreciation, and Consolidated was allowed a credit for the amount of the sales of energy by Penn Water to other persons. Closely associated with these provisions were the

illegal restrictions on the future activities of Penn Water which resulted in the invalidation of the whole contract. Therein Penn Water was required to obtain the approval of Consolidated before entering into any agreement for the sale or purchase of electric power and energy and to obtain the approval of Consolidated before making any investment or disposing of its property having a value in excess of $50,000. These restrictive conditions were included in order to safeguard Consolidated in the performance of its promises and it is conceded that without them the contract would have been impracticable and would not have been made. When the sweeping nature of these changes is considered with the fact that they have controlled the business transactions between the parties for twenty years, it is easy to understand why the contract of 1931 has been treated as the basic agreement and the 1927 agreement has been given little thought.[1]

It is true that the 1931 contract grew out of the prior contractual relationship between the parties and in that sense was supplemental to the 1927 agreement. Indeed the latter document contains the seed from which the subsequent illegal transaction has grown. It recited the prior sales of electric energy to Consolidated and the express purpose to broaden the scope of the cooperative use of the resources and facilities of the parties so as to benefit the public and avoid unnecessary duplication of investment, and it declared that no major investments affecting facilities should be undertaken by either party without informing the other and granting it under equal conditions the position of preferred customer or seller, as the case may be.

The 1931 agreement referred to those recitals and declared it to be the intent of the parties to accomplish a more complete coordination by the sale to Consolidated of all Penn Water's power and energy available for sale and by paying therefor

1. The 1931 agreement states that it supplements the agreement of 1927 and reaffirms the consistent provisions thereof; but a comparison of the documents shows that all of the substantial parts of the earlier agreement have been supplanted in the later leaving only incidental provisions that do not affect the conclusions herein reached.

on the basis of an annual charge sufficient to yield an equivalent revenue to that theretofore received by Power plus a reasonable income on its additional investments thereafter made. Obviously it was the intent of the parties to abandon the old relationship and to accept a new one and in furtherance of this purpose, to consolidate and merge the two agreements in one, the later agreement supplanting the earlier in all substantial respects and becoming the guide for their future actions. Unfortunately, in carrying out this purpose, Penn Water gave up its independent status as a producer and seller of electric energy and subjected itself so completely to the dominance of Consolidated as to violate the controlling statutes and hence the 1931 agreement must be stricken down. With it must also go the 1927 contract even though it be assumed to be lawful in its inception, for it is obvious that the parties never intended in any event to go back to their early relation. Indeed it would be unjust after the long lapse of time to require them to do so. Consolidated, having broken the law, is in no position to ask the relief of this court. See Virginia Dare Transp. Co. v. Norfolk Southern Bus Corp., 4 Cir., 176 F.2d 354; Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 176 F.2d 90; Duane v. Merchants' Legal Stamp Co., 231 Mass. 113, 120 N.E. 370, certiorari denied 249 U.S. 613, 39 S.Ct. 388, 63 L.Ed. 802.

The case here is not one where there has been merely an invalid amendment of a prior valid contract. If it were, there would be force in the suggestion that the declaration of invalidity of the amendment leaves the original contract in force. Here the prior contract has been merged in and its nature changed by the subsequent unlawful agreement, and as so changed, it has resulted in an unlawful relationship which has continued for twenty years. When the illegality of such relationship is declared, it is idle to contend that the court can withdraw the original contract from the illegal relationship and give validity, certainly after it has been buried therein for so long a period. It must perish along with the relationship of which it has been made an inseparable part.

We repeat, as we said in our opinion, that it is not our function to decide how far the activities of Penn Water and Consolidated are subject to the regulations of the Federal Power Commission or the Pennsylvania Public Utility Commission. "It may well be, although the present arrangement between the Maryland and Pennsylvania utilities is invalid for the reasons set forth, that an interconnection of facilities and an interchange of electrical energy between them may be continued by some method that would meet with the approval of the appropriate regulatory authority and will not offend either the anti-trust laws or the utility laws of Pennsylvania."

Throughout the trial of this case and in the argument of the pending motion, Penn Water has reiterated its desire to continue to supply electric energy to Consolidated; and in view of the close relationship between the parties, the existence of interconnecting equipment and the control over its rates by the regulatory bodies, there is no reason to fear that the interests of consumers of electricity in Maryland will suffer through the invalidation of the existing contract between the two utilities.

The District Court should issue a declaratory judgment (1) setting aside its judgment and order of March 18, 1950; (2) declaring that the agreements of December 31, 1927, June 1, 1931 and September 29, 1939 are void and of no effect; and (3) dissolving the restraining order of February 9, 1949.