**PENNSYLVANIA WATER & POWER CO.**

v.

**CONSOLIDATED GAS ELECTRIC LIGHT & POWER CO. OF BALTIMORE.**

**No. 6667.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1953.

Decided Dec. 16, 1953.

Wilkie Bushby, New York City (James Piper, R. Dorsey Watkins, Piper & Marbury, Baltimore, Md., Everett I. Willis, and Root, Ballantine, Harlan, Bushby & Palmer, New York City, on brief), for appellant.

Inzer B. Wyatt, New York City (Alfred P. Ramsey, Harry N. Baetjer, John Henry Lewin, Norwood Orrick, Venable, Baetjer & Howard, Baltimore, Md., and Sullivan & Cromwell, New York City, on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Pennsylvania Water & Power Company seeks in this action to recover from Consolidated Gas Electric Light & Power Company of Baltimore treble damages under Section 7 of the Sherman Act, 15 U.S.C.A. § 7, and Section 4 of the Clayton Act, 15 U.S.C.A. § 15, for losses suffered by Penn Water through acts done by Consolidated pursuant to an agreement between them which violated the provisions of these statutes. The case was submitted to the District Court on motion for summary judgment by the plaintiff on the complaint and answer of the parties and on the record in this court in Pennsylvania Water & Power Co. v. Consolidated G. E. L. & Power Co., 4 Cir., 184 F.2d 552, certiorari denied 340 U.S. 906, 71 S.Ct. 282, 95 L. Ed. 655, and on certain affidavits. The motion was denied, and final judgment dismissing the complaint was entered by the District Court on the ground that Penn Water was *in pari delicto* with Consolidated as a party to the illegal contract, and therefore could not recover under the rule laid down in federal decisions based on the anti-trust statutes.[1]

The differences between the parties, which are the subject of this suit, grew out of a contract between them of June 1, 1931. This agreement was declared to be in violation of the anti-trust acts by this court in the decision above mentioned, and in Pennsylvania Water & Power Co. v. Consolidated G. E. L. & P. Co., 4 Cir., 186 F.2d 934. It was also discussed in the later decision of this court in Consolidated Gas Electric Light & Power Co. v. Pennsylvania W. P. Co., 4 Cir., 194 F.2d 89, certiorari denied 343 U.S. 963, 72 S.Ct. 1056, 96 L.Ed. 1360, wherein a companion contract between the parties to this suit and the Safe Harbor Water Power Company was also invalidated.

The parties operated profitably under the two-party contract for many years. In 1948 a disagreement arose between them because of the desire of Penn Water to make an extension to its plant which it was not permitted to do under the agreement without the consent of Consolidated. Consolidated demanded arbitration of the dispute under a provision of the contract whereupon Penn Water on September 28, 1948 instituted a suit against Consolidated for a judgment declaring that the arbitration clause of the contract was unenforceable and enjoining further procedure thereunder. In this suit Penn Water took the position that if the agreement was construed as contended by Consolidated, it was against public policy and therefore unenforceable and void. Penn Water, however, did not repudiate the agreement at this time, but continued to press its views upon the operating committee set up by the agreement. On November 23, 1948 Consolidated formally prohibited the continuance of the new construction and thereafter, on December 20, 1948 Penn Water notified Consolidated that it terminated the agreement for the reason, among others, that it was in restraint of trade. On December 21, 1948 Penn Water filed an amended and supplemental complaint for the declaratory judgment that the two-party agreement was in violation of the Sherman Act and therefore invalid.

While this suit was in progress, there was also pending a proceeding for the reduction of Penn Water's rates before the Federal Power Commission, to which Penn Water raised the defense that the Commission was without jurisdiction because the proceeding involved the regulation of the commingled power distributed by the three power companies above mentioned and the continued performance of an agreement which had been

1. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 377, 47 S. Ct. 400, 71 L.Ed. 684; Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1; Eastman Kodak Co. v. Blackmore, 2 Cir., 277 F. 694; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 138 F. 2d 967, certiorari denied 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081; Ring v. Spina, 2 Cir., 148 F.2d 647, 160 A.L.R. 371; Singer v. A. Hollander & Son, 3 Cir., 202 F.2d 55.

declared illegal by this court. The Supreme Court, however, held that the Power Commission had complete authority to regulate sales of the power since Penn Water's duty to continue its coordinated operations with the other companies sprang from the Commission's statutory authority and not from the private contracts. See Pennsylvania Water & Power Co. v. Federal Power Comm., 89 U.S.App.D.C. 235, 193 F.2d 230; Pennsylvania Water & Power Co. v. Federal Power Comm., 343 U.S. 414, 421, 72 S.Ct. 843, 96 L.Ed. 1042.

Until the validity of the two-party agreement had been finally adjudicated, Penn Water was unable to proceed with the construction of the addition to its plant and the needed extension was delayed for a period of two and a half years. It now claims that by reason of the enforced delay it suffered damages in the sum of $5,909,137.01 caused by the increased costs of construction, the increased costs of financing, the loss of earnings and the expense of litigation. For this loss it now asks treble damages in the sum of $17,727,411.03.

We are in accord with the Second Memorandum of the District Judge, filed with the Court on April 6, 1953, that Penn Water is precluded from recovery in this case because it was a party to the illegal agreement upon which it now bases its claim to recover under the anti-trust acts. Penn Water contends that the doctrine of *in pari delicto* is no longer a defense to a private action for damages growing out of an anti-trust violation but has been rejected by the recent decisions of the Supreme Court in Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; and Moore v. Mead Service Co., 340 U.S. 944, 71 S.Ct. 528, 95 L.Ed. 681; Id., 10 Cir., 184 F.2d 338; Id., 10 Cir., 190 F.2d 540.

We do not so understand these decisions, for in none of them were the plaintiff and the defendant parties to the same illegal conspiracy or agreement on which the suit was based. In Mandeville Island Farms, Inc. v. American Crystal Sugar Co. suit was brought by a grower of sugar against a refiner who had entered into an illicit agreement with other refiners to pay a uniform price for sugar produced by the growers. The plaintiff in the case was a grower who had entered into a contract with the defendant refiner in which the grower agreed to sell his entire crop to the defendant and to plant and cultivate the crop under the defendant's direction. The grower was compelled by force of circumstances to sign such a contract or go out of business. The Supreme Court held that the anti-trust laws had been violated by the refiners and that therefore the grower was entitled to recover. It is obvious that this decision does not overrule the doctrine of *in pari delicto*. The grower who was compelled to enter into a contract with one of the refiners was not *in pari delicto* with the refiners who combined to control the price of the sugar produced by the growers. There is no parallel with the situation in the case at bar in which the plaintiff and defendant were parties to the same illegal conspiracy.

In Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc. a wholesaler of liquor brought suit under the anti-trust acts against certain distillers who had conspired to sell liquor to wholesalers only on the condition that they would resell at prices fixed by the distillers. It was held that this agreement violated the anti-trust statutes, and that it was no defense to the suit that the wholesalers had entered into an agreement with other wholesalers to set a minimum price at which the liquor sold by them should be resold by the retailers. The court said that if the wholesalers were themselves guilty of infractions of the law, they could be held responsible therefor, but that this conduct did not legalize the unlawful combination of the distillers.

In Moore v. Mead Service Co. a baker brought suit against others in a similar business who had entered into an illegal agreement to reduce the price of their bread in the city in which the plaintiff's bakery was located but at no other place where they sold their products. This agreement was made to offset a previous agreement between the plaintiff and certain retailers of bread in the city in which they agreed to buy only from him. It was held by the lower courts that both of these agreements were illegal and since the plaintiff himself was a party to the last mentioned agreement he could not recover from the defendants. This decision was reversed by the Supreme Court on the authority of the decision in Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., and it was subsequently determined that the plaintiff was entitled to recover from the defendants. Here again the plaintiff was not a party to the illegal agreement which formed the basis of his suit, and hence the situation does not parallel that in the pending suit.

We are satisfied that it was not the intention of the Supreme Court to overrule the doctrine firmly established in earlier cases. Consequently it must be given effect in this action. The plaintiff, however, contends that it cleansed itself of all wrongdoing when it repudiated the agreement and retired from the conspiracy in 1948, and therefore it is entitled to recover for damages which were subsequently caused by the insist-

ence of Consolidated upon its rights under the agreement.[2] The contention is not tenable under the facts of the case. Consolidated's prohibition of the erection of the new plant by Penn Water occurred during the period when both parties recognized the existence and validity of the agreement, and Penn Water's repudiation and suit for a declaratory judgment for the purpose of invalidating the agreement did not occur until later. It is true that Consolidated thereafter continued to defend the agreement and to insist upon its rights thereunder and the question was not resolved until the termination of the litigation. Penn Water, however, cannot absolve itself from responsibility for this situation. It had entered the agreement in the first place voluntarily on equal footing with Consolidated. It had lived and acted under it for seventeen years. Copies of the contract had been filed with state and federal regulatory bodies. Penn Water had entered into complicated arrangements with Consolidated and Safe Harbor for the distribution of electrical energy in several states under the regulation of the Federal Power Commission, and these arrangements were of such a nature that Penn Water was obliged to continue them at least in part under the decision of the Supreme Court, despite the finding that the basic agreement of June 1, 1931 was illegal.

It was not practicable to discontinue and abolish this structure instantaneously and at the point of time when Penn

2. In this connection plaintiff cites Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 and Ring v. Spina, 2 Cir., 148 F.2d 647, 160 A.L.R. 371 as cases in which the plaintiff was allowed to recover under the anti-trust statutes, although he was party to the illegal contract under which the injury was inflicted, because he had repudiated the contract and had not participated in illegal actions during the period for which the recovery was sought. The cases do not support the contention, for it was expressly stated that the parties were not in pari delicto in that the plaintiff acted under duress or economic compulsion.

There was neither duress nor compulsion in the execution of the contract of June 1, 1931 between the parties to the instant suit.

In Connecticut Importing Co. v. Frankfort Distilleries, Inc., 2 Cir., 101 F.2d 79 recovery was allowed to a plaintiff who together with a distiller and other distributors had been party to an illegal price-fixing agreement. The plaintiff failed to conform to the fixed price and was refused further goods. The conspiracy among the other defendants, however, was continued, and recovery was based on their acts after the plaintiff ceased to be a party to the agreement.

Water became dissatisfied. The questions of law involved were not free from difficulty and were not finally concluded until after there had been protracted litigation in several courts. Penn Water's inability to proceed with its new extension until the court had spoken is directly traceable to its participation in the unlawful enterprise. The District Judge in his Second Memorandum filed with the Court on April 6, 1953 was justified in his conclusion on this branch of the case which he expressed in the following language in his opinion: "True, the damaging effects of the injury, such as loss by reason of the delay, continued until January, 1951, the date of the avoidance of the two-party contract, but the continuation is attributable to bona fide litigation of the validity of the agreement, a real and substantial controversy. All of such damage flows directly, without supervening cause, from the original injury, the unlawful restraint imposed before repudiation of the agreement for its anti-trust character."

Affirmed.

Magruder, C. J., dissented in part.