360 F.2d 896
 CREST AUTO SUPPLIES, INC., Protecto of Michigan, Inc., and Morris Einhorn, Plaintiffs and Counter-Defendants, Appellants, and
Albert Garfield, Orville B. Lefko, George Haar, and Ben Krugel, Counter-Defendants, Appellants,
v.
ERO MANUFACTURING COMPANY, Defendant and Counter-Plaintiff, Appellee.
 No. 15381.
 United States Court of Appeals Seventh Circuit.
 May 20, 1966.
 
 Mark A. Greenhouse, Chicago, Ill., for appellants, Collen & Kessler, Chicago, Ill., of counsel.
 Earl E. Pollock, Michael M. Lyons, Chicago, Ill., for appellee, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., of counsel.
 Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 Plaintiffs filed a six-count amended complaint under 28 U.S.C. § 1337 charging defendant with violations in its franchising agreements of the anti-trust laws and seeking treble damages in all counts. A separate plaintiff in each of the first three counts charged defendant with identical violations (as to each of the three plaintiffs) of § 1 of the Sherman Act, 15 U.S.C. § 1 (price fixing), § 3 of the Clayton Act, 15 U.S.C. § 14 (exclusive dealing), and § 2 of the Clayton Act, as amended by § 2(a), (e) of the Robinson-Patman Act, 15 U.S.C. § 13(a), (e) (discrimination in prices and services). A separate one of the plaintiffs in each of the last three counts charged that he had been required by the franchise agreement to pay certain amounts of money to defendant for advertising purposes, and that defendant had failed to use the money for this purpose. Defendant filed seven counterclaims against the plaintiffs and four individual counter-defendants (hereafter "guarantors") for money due for merchandise, unpaid rent and advertising. The district court granted defendant's motion for summary judgment on the Sherman Act and Clayton Act § 3 claims of the first three counts and on the remaining three counts, and granted defendant's motion to dismiss with prejudice the claims under § 2 of the Clayton Act in the first three counts. The court also granted defendant's motion for summary judgment on defendant's seven counterclaims. Plaintiffs and the individual guarantors have appealed. We affirm.
 
 
 2
 Ero Manufacturing Company, defendant, an Illinois corporation which manufactures automobile seat covers, convertible tops, and related accessories, granted exclusive franchises to fourteen stores in an attempt to establish a nationwide system. Plaintiffs, Crest Auto Supplies, Inc., an Illinois corporation, Protecto of Michigan, Inc., a Michigan corporation, and Morris Einhorn, of Cincinnati, Ohio, received seven of the fourteen franchises and were licensed to use defendant's trade name "Protecto" in operating automobile seat cover stores.[1] Albert Garfield, an Illinois resident, and Orville B. Lefko, George Haar, and Ben Krugel, residents of Detroit, Michigan, were joined, as counter-defendants on defendant's counterclaims, as guarantors of plaintiffs' franchise obligations: Garfield of the Crest Auto lease and the other three of financial obligations of Protecto of Michigan.[2]
 
 
 3
 The first issue raised is whether the district court erred in ordering the guarantors joined, under Rule 13(h),[3] and in deciding that Lefko, Haar, and Krugel were within the court's jurisdiction.
 
 
 4
 The guarantors now contend that they should not have been brought in under Rule 13(h) because they were not "required for the granting of complete relief," and that the court could not obtain in personam jurisdiction over them in Michigan. Ero's motion to join these individuals was filed on May 1, 1964. The court, by order dated June 5, 1964, granted the motion. In its Memorandum Opinion of June 1, indicating it would grant the motion over plaintiffs' opposition, the court states:
 
 
 5
 Plaintiffs oppose this motion on two grounds (1) that said additional parties are not "indispensable" so as to meet the requirements of Rule 13(h), and (2) the court cannot acquire jurisdiction of Lefko, Haar, and Krugel. (Emphasis added.)
 
 
 6
 Any opposition at this point was by plaintiffs, not by the guarantors. Only after the court granted the motion were the guarantors served with summons.[4] It does not appear that any motion to quash was made. Nor did any guarantor raise any joinder or jurisdictional objection by motion. It is significant that the individual guarantors filed, on June 30, 1964, their answers to Ero's counterclaims; in none of their answers were these objections raised. Pursuant to Rules 12(b) and (h) they have waived any objection they had on these points.[5] We need not reach the merits of the joinder and jurisdictional questions.
 
 
 7
 The main question is whether plaintiffs alleged any claims upon which relief of treble damages for civil anti-trust violations can be granted.
 
 
 8
 Crest Auto charged that defendant, "and other coconspirators, to the Plaintiffs unknown," agreed to "unlawfully restrain and substantially lessen competition" in the market by fixing and maintaining prices of defendant's products and by creating or inducing boycotts, in violation of § 1 of the Sherman Act; that defendant violated § 3 of the Clayton Act by contracting for the sale of, and fixing prices for, its products with the provision that Crest Auto "not use or deal in" similar products of others, and that the contract tended to lessen competition and to create a monopoly; and that defendant violated § 2 of the Clayton Act, as amended, by granting discriminations in prices and services to certain customers without offering the same prices and services to other customers, including Crest Auto.
 
 
 9
 The alleged unlawful overt act pursuant to the conspiracy, charged in the complaint, is defendant's use in granting its franchises to dealers, including Crest Auto, of an "Exclusive Dealers Franchise Contract," which contains a provision prohibiting the dealer, including Crest Auto, from selling or using any products of defendant's competitors, except with defendant's consent. The effect charged is that "on numerous occasions" competitors of defendant approached Crest Auto offering products similar to defendant's at generally lower prices. The injury alleged was the constant refusal of defendant, pursuant to the alleged unlawful contract, to permit Crest Auto to trade with these competitors of defendant, and the consequent business loss of $60,000.00.
 
 
 10
 Protecto of Michigan, Inc., and Einhorn, adopted the allegations of Crest Auto in their charges against defendant, with alleged resultant injury and business loss of $125,000.00 and $75,000.00 respectively. All plaintiffs also charged that under the alleged unlawful franchise contracts they were "forced" to pay 20% of the purchase price of defendant's products for the purported purpose of advertising, but that the moneys were not used for that purpose. Each seeks damages for treble the amount so paid. Defendant admitted the franchise contracts with plaintiffs but denied all allegations of unlawful conduct. Its motion for summary judgment, or alternatively, to dismiss the three anti-trust counts for failure to state a claim upon which relief can be granted, followed.
 
 
 11
 The district court decided, in granting summary judgment for defendant upon plaintiffs' civil anti-trust charges under § 1 of the Sherman Act and § 3 of the Clayton Act, that plaintiffs were in pari delicto with defendant if the charges were true, and that plaintiffs were accordingly barred from maintaining the charges. The court then found that plaintiffs' allegation of a violation of § 2 of the Clayton Act did not state a claim upon which relief could be granted because there was no allegation that the alleged discrimination in prices and services "substantially lessened competition or tended to create a monopoly in any line of commerce," and that without the requisite competitive effect the alleged discrimination was not unlawful.
 
 
 12
 There is no quarrel with plaintiffs' first proposition "that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles * * *," citing Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). (Emphasis added.) See also Alles Corp. v. Senco Products, Inc., 329 F.2d 567, 572 (6th Cir. 1964). Nor is there any dispute over the proposition that the court must look at the record on summary judgment in the light most favorable to the party opposing the motion, and that, as stated by the Supreme Court in Poller, 368 U.S. at 467, 82 S.Ct. at 488, summary judgment under Rule 56(c) should be entered only when the pleadings, depositions, affidavits and admissions show there is no "genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. We cannot agree, however, that therefore the court was wrong in granting summary judgment here; proof of subjective states is not involved, and the only alleged genuine issue is whether the court could decide that the parties were in pari delicto.
 
 
 13
 We see no merit in plaintiffs' contention that the question of pari delicto is always one of fact which could not on this record be decided as a matter of law, but instead must be determined at a trial. Plaintiffs refer to a "feeling" in "all the Courts" against the pari delicto rule in private anti-trust cases. The only animus we detect in the courts on the pari delicto question is directed at protecting those who are coerced into illegal agreements as this court did in Jewel Tea Co. v. Local Unions, 274 F.2d 217, 223 (7th Cir.) cert. denied, 362 U.S. 936, 80 S.Ct. 757, 4 L.Ed.2d 747 (1960); and see Bales v. Kansas City Star Co., 336 F.2d 439, 444 (8th Cir. 1964); or at permitting suits where the defense is the unclean hands of a plaintiff in transactions other than the one in suit, as the Supreme Court held in Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214, 71 S.Ct. 259, 95 L.Ed. 219 (1951). But where a plaintiff participates freely in the alleged anti-trust conduct, the pari delicto rule precludes recovery. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 377, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Pennsylvania Water & Power Co. v. Consolidated G. E. L. & P. Co., 209 F.2d 131, 133-134 (4th Cir. 1953), cert. denied, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954); Bales v. Kansas City Star Co., 336 F.2d 439, 444 (8th Cir. 1964); see this court's dictum in Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967, 971 (7th Cir. 1943), cert. denied, 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944). As Judge Soper said in Pennsylvania Water, 209 F.2d at 134, the doctrine that a plaintiff who is a voluntary party to the allegedly illegal agreement which forms the basis for the anti-trust suit cannot recover thereon was "firmly established in earlier cases," and still remains to be given effect in appropriate actions.
 
 
 14
 The district court had before it not only the pleadings in this case, but also the depositions of the plaintiffs and affidavits of defendant's auditor. Plaintiffs, in opposing the motion for summary judgment, relied solely on their amended complaint.[6] There is no allegation or inference that plaintiffs were coerced into the franchises, or that business necessity amounting to coercion compelled their acceptance of the agreements now complained of. Exactly the opposite appears. Crest sought and received its second franchise a year after its first one; Einhorn executed his second franchise contract over eight months after the first one. As the district court pointed out, none of the plaintiffs at any time sought defendant's permission to deal in products of other manufacturers. From the depositions it also appears that the plaintiffs were seeking business opportunities, looked into the proposition offered by the defendant, and, as the officer of one of the plaintiff-corporations said, "desirious of bettering his own economic position," embraced it. There is no "genuine issue as to any material fact," Rule 56(c), and therefore summary judgment was proper upon the Sherman Act and § 3 Clayton Act claims of the amended complaint.
 
 
 15
 The district court concluded that "[t]he third anti-trust charge, the alleged violation of Secs. 2(a) and 2(e) of the Clayton Act, * * * must also fall" for failure to state a claim upon which relief can be granted. The reason given is that the amended complaint merely charged in general terms defendant's discrimination in prices and services to "certain of their customers" without making the same prices and services available to "others of their customers including the plaintiff herein,"[7] and that the omission of any allegation of adverse competitive effect in the price discrimination, i. e., that the alleged discrimination substantially lessened competition or tended to create a monopoly, and the absence of competition in regard to § 2(e), was a fatal defect.
 
 
 16
 Plaintiffs contend that their allegation of a violation of § 2 of the Clayton Act gave notice to defendant of the statutory elements set forth in the Act. Defendant argues here, so as to meet plaintiffs' claim that the allegations were particular enough, that the question is not of particulars in pleading but in essentials. The district court in Johnny Maddox Motor Co. v. Ford Motor Co., 202 F.Supp. 103, 106-107 (W.D.Tex.1960) (alternative holding), granted summary judgment because of the failure of the complaint to show a right of recovery under the § 2 violation, although the allegations of that violation were "more specific" than other alleged anti-trust violations. The court quoted from Feddersen Motors, Inc. v. Ward, 180 F.2d 519, 522 (10th Cir. 1950), the general rule that there must be alleged a violation of the antitrust act in the form of harm to the general public in undue restriction of interstate commerce. In Albert H. Cayne Equip. Corp. v. Union Asbestos & Rubber Co., 220 F.Supp. 784, 789 (S.D.N.Y. 1963), the court dismissed a § 2(a) Clayton Act claim because it "utterly failed to allege facts" showing the requisite adverse effect upon competition, and had "no allegations whatever concerning commerce". The court noted the obvious — price discrimination is but one element of the statutory violation, and is neither per se illegal or unfair. And in Robinson v. Stanley Home Products, Inc., 178 F. Supp. 230, 233 (D.Mass.1959), there was "not even an allegation, much less any statement of facts" indicating an adverse effect upon competition; and the complaint was said to be inadequate under § 2(a) of the Clayton Act.[8]
 
 
 17
 Plaintiffs admit their allegation of the § 2 violation is a conclusion, but rely for its sufficiency upon Arthur H. Richland Co. v. Harper, 302 F.2d 324, 326 (5th Cir. 1962), and United States v. Bruce, 353 F.2d 474, 477 (5th Cir. 1965). A reading of the pertinent parts of the claims set forth in those cases (not civil antitrust cases) suffices to show that facts, not conclusions, were pleaded.
 
 
 18
 It is clear that one of the elements of a violation of § 2(a), as amended by the Robinson-Patman Act, is the requisite competitive effect, and that price differentials alone are not enough. 15 U.S.C. § 13(a); F. T. C. v. Anheuser-Busch, Inc., 363 U.S. 536, 543, 549-550, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960); Borden Co. v. F. T. C., 339 F.2d 953, 956 (7th Cir. 1964). And a violation of § 2(e) in discrimination in furnishing of services requires that there be competition between the two classes of customers. See F. T. C. v. Simplicity Pattern Co., 360 U.S. 55, 58, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959). In the amended complaint before us,[9] plaintiffs have neither alleged any competitive effect or competition in any sense, nor set forth any facts concerning the unspecified discrimination from which it may be inferred.
 
 
 19
 We think that the guiding principle in fair notice pleading is that sufficient ultimate facts must be alleged to enable the trial judge to determine whether, if the allegations are true, a claim has been stated upon which relief can be granted. Neither a judge nor this court can test a pleading which merely copies some of the words of the statute, violation of which is the alleged basis of the complaint. The complaint here, though amended, falls short. The district court did not err in granting the motion to dismiss the claims under "Section 2 of the `Clayton Act,' as amended. * * *"
 
 
 20
 The affidavit of David J. Bitran, defendant's auditor, filed in support of defendant's motion for summary judgments on its counterclaims, is attacked in this court as insufficient to make a showing that there were no genuine issues of material facts. Counter-defendants have not suggested what issues remain. No counter-affidavits were filed, nor any motion directed at the affiant's statements. The claim is that certain statements sworn to in the affidavit would be inadmissible at a trial because they are not based on personal knowledge and are also conclusions, and that therefore the necessity of meeting the affidavit was obviated. We have read the Bitran affidavits.[10] There is no merit to the challenge of Bitran's affidavit in support of defendant's counterclaims on the grounds asserted. Bitran, as defendant's auditor, could testify at a trial to the statements made, based on his personal knowledge. As stated before, there is no affidavit controverting the statements and exhibits: The subleases made to plaintiffs, by defendant, the terms and rentals, defaults and mitigating re-rentals by defendant are fully set forth. The written guarantees of the counter-defendant guarantors are described so as to establish their liability. Defendant's claims for unpaid merchandise and defaults in payments for advertising are stated with less particularity. But again, counter-defendants did not request greater particularity. No counter-affidavit was filed to controvert the figures, disproving the sworn statement of Bitran, and even now they do not argue that the amounts stated are erroneous. They concede that they may not rest, under Rule 56(e), upon the mere allegations in their pleadings if defendant's motion was properly supported by the affidavit. It follows that the district court did not err in disposing of these counter-claims by rendering summary judgment for defendant upon them.[11]
 
 
 21
 The judgments of the district court are affirmed.
 
 
 
 Notes:
 
 
 [1]
 Protecto Products Co. was defendant's wholly-owned subsidiary. Crest had two stores in the Chicago area; Protecto of Michigan had three stores in the Detroit area; and Einhorn had two stores in Cincinnati
 
 
 [2]
 It also appears that the guarantors were officers and directors of the respective corporations
 
 
 [3]
 Fed.R.Civ.P. 13(h). Additional Parties May Be Brought In
 When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counter-claim or cross-claim, the court shall order them to be brought in as defendants as provided in these rules, if jurisdiction of them can be obtained and their joinder will not deprive the court of jurisdiction of the action.
 
 
 [4]
 The validity of the extraterritorial service is based on Rule 4(d) and (f), and the Illinois "long-arm" provisions, Ill.Rev. Stat. ch. 110, §§ 16 and 17(a) (1)
 
 
 [5]
 Fed.R.Civ.P. 12(b) provides that every defense to a counterclaim shall be asserted in the "responsive pleading thereto," except that specific defenses, including lack of personal jurisdiction and insufficiency of service, may be made by motion. Rule 12(h) provides that the defenses and objections here involved are waived if not made by motion or in the party's answer or reply
 
 
 [6]
 Fed.R.Civ.P. 56(e) provides in part:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 
 
 [7]
 The amended complaint alleges:
 
 
 [13]
 During the period on or about May 29, 1958 up to and including the date hereof, the Defendant violated Section 2 of the "Clayton Act," as amended; in that they granted discriminations in prices and services to certain of their customers without offering or otherwise making available those same prices and services to others of their customers including the Plaintiff herein
 
 
 [8]
 
 The court of appeals affirmed, 272 F.2d 601 (1st Cir. 1959), considering only alleged violation of § 2(c) of the Clayton Act.
 
 
 [9]
 See note 7, supra
 
 
 [10]
 Plaintiffs have not challenged the court's granting of defendant's motion for summary judgment on Counts IV-VI,i. e., the alleged misuse of advertising moneys. In the affidavit in behalf of defendant's motion for summary judgment on these claims, which plaintiffs also do not challenge, Bitran affirms his personal knowledge and denies misuse of moneys paid by plaintiffs under their franchises, and sets forth the amounts spent by defendant for advertising, including the amounts received from plaintiffs. He states his opinion with respect to the cause of plaintiffs' losses in the trade in the years in question, and also that defendant lost money in that period.
 
 
 [11]
 The district court fully considered the same issues raised here. The court said:
 "The affidavit * * * meets the requirements of Rule 56(e). It is based on personal knowledge, and a detailed account of how such knowledge was obtained is provided (See Par. 2). The Exhibits filed in support of said affidavit [copies of the subleases, written guarantees, assignment agreements, and some franchise contracts] add credence to the factual averments, and satisfy Rule 56. * * * Counter-defendants have not submitted any evidence to refute these sworn factual averments, and rely inadequately on their unverified answers to the counterclaims. The averments of the affidavit, supported by the extensive exhibits filed herein, must control. Indeed, counter-defendants do not even deny the accuracy of the sworn facts, but merely question the validity of the affidavit."