**TREBUHS REALTY CO., Inc. et al. v. NEWS SYNDICATE CO., Inc. et al.**

United States District Court
S. D. New York.
Sept. 11, 1952.
Motion for Reargument Denied
Oct. 10, 1952.

Klein & Weir, New York City, for plaintiffs.

McCauley & Henry, New York City, Clarence J. Shearn, Jr., New York City, of counsel, for defendants Hearst Corp. and Hearst Consolidated Publications, Inc.

Brown, Cross & Hamilton, New York City, E. Douglas Hamilton, New York City, of counsel, for defendant New York Herald Tribune, Inc.

M. Marvin Berger, New York City, for defendant New York Post Corp.

DeWitt, Van Aken & Nast, New York City, Harry H. Van Aken, Thomas A. Diskin, New York City, of counsel, for defendant New York World-Telegram Corp.

WEINFELD, District Judge.

In this action under the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq., the plaintiffs move pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to strike affirmative defenses by four of the defendants as insufficient in law, impertinent and immaterial.

The plaintiffs seek an injunction restraining the defendants, publishers of newspapers in New York City, from refusing to sell them amusement advertising space and from refusing to sell them such space at rates which will extend to them the same financial advantages granted to other advertisers who purchase the same quantity of space as plaintiffs. No demand is made for money damages.

The relief sought is based upon a complaint which in substance alleges: that plaintiffs own and operate theatres for the presentation of legitimate plays in New York City, which they lease to independent producers under contracts, whereby they share in the box office receipts and also bear a part of the expenses for advertising plays in New York City newspapers; that the advertising rates charged by the defendants are dependent upon the amount of space purchased by each individual advertiser, decreasing as the number of lines increases; that the plaintiffs, by reason of their ownership of fifteen

theatres, are in a position to purchase more space than that purchased by individual producers and so to take advantage of the lower rates; that in the case of plays produced at plaintiffs' theatres, the defendants have engaged in a continuing conspiracy in restraint of trade by selling amusement advertising space exclusively to individual producers who lease plaintiffs' theatres and by refusing to sell such space to plaintiffs, thereby preventing them, as mass purchasers of space for the total attractions, from obtaining reduced rates.

In addition to a general denial of the material allegations of the complaint, the four defendants have interposed substantially similar affirmative defenses which are under attack by the present motion. They allege that the plaintiffs have been, and are, engaged in a combination to monopolize and control the booking of plays in legitimate theatres in New York City; that by reason of their said monopoly and as a condition of leasing their theatres, they have required of, and forced upon, the producers of plays clauses in their agreements which prevent the said producers from advertising in media of their own selection and compel them to advertise only through agencies designated by plaintiffs, thus denying to the individual producer freedom of choice in these matters.

Finally, it is claimed that the plaintiffs by this action are attempting to coerce and compel the defendants to discriminate in plaintiffs' favor and against their competitors with respect to rates charged for amusement advertising; that the relief sought would in effect foster the plaintiffs' monopoly and control over producers of plays and the advertising of plays in New York City and elsewhere. Although there are allegations by three of the four defendants that the illegal conspiracy charged to the plaintiffs has damaged them, no counterclaim has been interposed either for damages or injunctive relief.

The claimed force of the affirmative defense is two-fold: first, that plaintiffs are precluded by reason of the doctrine of "unclean hands" from obtaining relief in a court of equity; second, the defendants say that plaintiffs are in effect seeking a decree in equity which, if granted, would be in aid of a conspiracy violative of the antitrust laws and would strengthen plaintiffs' dominance and control over producers of legitimate plays and prevent the defendants from engaging in free enterprise and from offering advertising rates without discrimination.

The decisions relied on by the parties appear to manifest a gradual development of a judicial attitude towards the defenses of "unclean hands" and "in pari delicto" in cases involving the public interest. They will here be considered in three groups.

The early infringement suits by those who had a property right in patents or copyrights were not barred by plaintiff's violations of the antitrust laws.[1] The underlying rationale of most of these holdings was that the plaintiff's misconduct was not related closely enough to the subject matter of the suit to warrant the application of the doctrine of "unclean hands."[2] These were followed by a series of Supreme Court rulings in which the owner of a patent was denied relief against an infringer where, through the use of the patent, he restricted competition or created a monopoly in unpatented items.[3] The denial of relief did not turn

1. Patents: e. g., National Electric Products Corp. v. Circle Flexible Conduit Co., E.D.N.Y., 1931, 57 F.2d 219; Radio Corporation of America v. Majestic Distributors, D.C.Conn., 1931, 53 F.2d 641; General Electric Co. v. Minneapolis Electric Lamp Co., D.Minn., 1924, 10 F.2d 851. Copyrights: e. g., Buck v. Cecere, W.D.N.Y., 1942, 45 F.Supp. 441; Vitagraph v. Grobaski, W.D.Mich., 1931, 46 F.2d 813.

2. Some of the earliest cases, however, did not too closely search out the connection between the claimed violations and the rights asserted. See Motion Picture Patent Co. v. Laemmle, S.D.N.Y., 1910, 178 F. 104; Johns-Pratt Co. v. Sachs Co., C.C.Conn., 1910, 176 F. 738; National Folding Box & Paper Co. v. Robertson, D.C.Conn., 1900, 99 F. 985.

3. E. g., Mercoid Corp. v. Mid-Continent Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Honeywell Co., 1944, 320 U.S. 680, 64 S.Ct. 278,

on whether the particular defendant suffered from the misuse of the patent. It was the use, or misuse, of the patent grant contrary to the public interest which was the basis of withholding relief to the patentee by the courts of equity.

Another group of cases involved actions on contract in which the defense was that the promisee was engaged in a conspiracy to violate the antitrust laws. Whether that defense was allowed depended upon the relationship of the contract in question to the illegal scheme. Here, as in the instance of infringement suits, if the violation was related closely enough to the subject matter of the action and the contract was part of the scheme, the defense of illegality was upheld.[4] But if the contract was wholly unconnected with the asserted conspiracy, plaintiff could maintain his suit.[5] It will be noted, however, that in those patent and contract cases in which the defense was allowed, defendant was not charged with combining in restraint of trade, but with infringement or breach of contract. He was not charged with offending the public interest, but, rather, with invading the individual rights of the plaintiff.

Still a third group of cases involved actions charging antitrust violations, in which the fact that plaintiff had acquiesced in, or furthered, the conspiracy of which he now complained, was found to preclude suit.[6] Since plaintiff had participated in the very scheme with which he charged defendant, he was in no position to complain. The defense was upheld on the principle of "in pari delicto."

It may be acknowledged that no sharply defined principle emerges from all these cases, some of which are not altogether consistent. What does appear, however, is that the defenses of "unclean hands"

and "in pari delicto" were not considered solely within the framework of traditional equity concepts. In determining whether the defense should be permitted or denied, decisive weight was given to the necessity of vindicating the public interest in free competition—a necessity overriding the particular equities which might exist between the immediate parties.

The importance of giving paramount consideration to antitrust policy has been crystalized in two recent cases, which, in my opinion, require the granting of plaintiffs' motion. In the first of these, Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 1951, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219, a treble damage action, the defendants had violated the Sherman Act by fixing maximum resale prices and refusing to sell to wholesalers unless they agreed to dictated maximum resale prices. The defendants introduced evidence to show that the plaintiff-wholesaler had violated the antitrust laws by agreeing with other wholesalers to fix minimum prices for the sale of liquor. The Supreme Court held that plaintiff's participation in such a conspiracy was not a defense.

"If [plaintiff] and others were guilty of infractions of the antitrust laws, they could be held responsible in appropriate proceedings brought against them by the Government or by injured private persons. The alleged illegal conduct of [plaintiff], however, could not legalize the unlawful combination by [defendants] nor immunize them against liability to those they injured. Cf. Fashion Originators' Guild v. Trade Comm., 312 U.S. 457, 668, 61 S.Ct. 703, 85 L.Ed. 949 * * *." 340 U.S. at page 214, 71 S.Ct. at page 261, 95 L.Ed. 219.

---

88 L.Ed. 396; Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 62 S. Ct. 402, 86 L.Ed. 363.

4. E. g., Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 S.Ct. 280, 53 L.Ed. 486; cf. Delaware L. & W. R. Co. v. Frank, C.C., 110 F. 689.

5. Small Co. v. Lamborn & Co., 267 U.S.

248, 45 S.Ct. 300, 69 L.Ed. 597; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679; Bell v. Lamborn, 4 Cir., 2 F.2d 205; cf. Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219.

6. E. g., Eastman Kodak Co. v. Blackmore, 2 Cir., 277 F. 694; Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1.

The second of the cases has an interesting history. A short time before the ruling in the Kiefer case, the Court of Appeals for the Tenth Circuit decided Moore v. Mead Service Co., 1950, 184 F.2d 338, 340. Plaintiff had conspired to prevent the sale in his city of all but his own products. To counteract the effects of this conspiracy, the defendants, competitors of plaintiff, reduced their prices only in that city, while maintaining them in others. Plaintiff thereupon instituted a treble damage action, charging the defendants with violating the Robinson-Patman Act, 15 U. S.C.A. § 13(a). The Court of Appeals held that since the plaintiff was "actually in pari delicto" and his damages were the direct result of his participation in an unlawful combination to create a monopoly, he could not recover.[7] Subsequently, the Supreme Court vacated the judgment and remanded the case "for further consideration in the light of" the Kiefer case.[8] Upon such reconsideration, the Court of Appeals held that the Kiefer case controlled and that plaintiff was not precluded from bringing his action.[9]

█ In my opinion, the Kiefer and Moore cases show a clear trend toward the abolition of the defense of "unclean hands" in antitrust violation suits.[10] The defendants contend that these are distinguishable because they are actions at law.[11] In neither case did the Supreme Court rely on or even mention this distinction. While this is not controlling since the precise point was not at issue in either case, the policy considerations inherent in the rejection of the "unclean hands" defense in actions at law are equally applicable to suits in equity. In authorizing private remedies for persons injured by infractions of the antitrust laws, Congress intended to provide not only for private redress but also to impose sanctions to secure the more effective enforcement of antitrust legislation.[12] The fact that Congress also authorized Government action does not detract from what might be termed the dual character inherent in a civil suit based upon such legislation— vindication of the public interest as well as redress of private injury. And, of course, "Courts of equity may * * * go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."[13] More specifically, public policy may preclude an application of the doctrine of "unclean hands."[14] Whatever equities may be present as between private litigants, they must yield to the overall public policy of the antitrust laws to prevent monopolies and restraint of trade.[15]

7. But see comment on this ruling in 51 Columbia Law Review 523.

8. Moore v. Mead Service Co., 1951, 340 U.S. 944, 945, 71 S.Ct. 528, 95 L.Ed. 681.

9. Moore v. Mead Service Co., 10 Cir., 190 F.2d 540, 541, certiorari denied 342 U.S. 902, 72 S.Ct. 290.

10. See 61 Yale Law Journal 1010, 1028–1030.

11. In support of their position they note the comment of the Court of Appeals for this Circuit in Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 106, that the ruling in the Kiefer case "has given the 'unclean hands' doctrine a somewhat narrowed scope." Accordingly, they urge that the defense may still be advanced to defeat equitable claims, although unavailable in actions at law in antitrust suits. This appears to be a rather strained interpretation of the Court's passing comment.

12. See Maltz v. Sax, 7 Cir., 134 F.2d 2, 4, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720; Wilder Mfg. Co. v. Corn Products Co., 236 U.S. 165, 174, 35 S.Ct. 398, 59 L.Ed. 520.

13. Virginia R. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789. See also United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 83 L.Ed. 1211; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 493, 62 S.Ct. 402, 86 L.Ed. 363.

14. Shinsaku Nagano v. McGrath, 7 Cir., 187 F.2d 753, 759.

15. The complete subordination of such special equities and defenses which may exist between private litigants to the paramount public interest is demonstrated in Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 669–670, 64 S.Ct. 268, 88 L.Ed. 376. The plaintiff sought to avoid the "unclean hands" defense there interposed by a plea of res judicata

600

■ The defendants next urge that in Kiefer and Moore the violations in each case were collateral to the illegal conspiracies engaged in by the defendants; that there was no causal nexus between the wrongs, whereas in the instant case plaintiffs' alleged violations of the antitrust laws are directly connected with the subject matter of the suit. It is by no means clear that the facts of the Moore case warrant this distinction since it appears that there the defendants' violations of the antitrust laws were in direct response to the plaintiff's conspiracy. Defendants specifically showed that they were being driven out of business by plaintiff's misconduct in the latter's city.[16]

In the instant case there is no allegation that defendants' conduct was caused by plaintiffs' acts. The affirmative defenses accuse the plaintiffs of monopolizing the booking of plays, dictating to producers as to advertising agencies and advertising media, thereby preventing them from freely arranging and selecting their own advertising and publication media to the defendants' injury. Thus, the relationship between the alleged illegal acts of plaintiffs and those charged to the defendants seems more remote here than in the Moore case. Furthermore, plaintiffs' alleged conduct seems less to injure the defendants than persons not parties to this action. Indeed, from the conclusory allegations set forth in the defenses, it is difficult to determine, as it was not in the Moore case, just what the injury is of which defendants complain.

■ Defendants further assert that making relief available to plaintiffs will force the defendants to discriminate in favor of the plaintiffs and against the small producer. But none of the affirmative defenses alleges that providing plaintiffs with advertising at reduced rates will, without more, constitute a violation by defendants of the antitrust laws. The defendants admit that it is their policy to sell increased space to the amusement advertiser at reduced rates; and neither party has asserted that it is illegal for them to do so. Of course, if it appears on trial that, in fact, an injunction will compel defendants to discriminate illegally and in violation of the statutes, such relief may be withheld.

■ Finally, defendants urge that a rejection of their defense will aid the plaintiffs to strengthen their monopolistic practices. It seems to me that this contention is adequately answered by pointing out that defendants, three of whom allege injury as a result of plaintiffs' conduct, may either bring a separate suit for relief, or counterclaim in this action, where a court of equity with its broad powers could appropriately mold its decree.[17] There also remains relief by Governmental action.[18] Defendants' view, fully spelled out, would mean that when respective litigants are both engaged in antitrust violations, the wrongful conduct of each is a defense to the other's suit, with consequent dismissal of the complaint and a standoff. In effect, the misconduct of each serves to immunize the other from liability. The public in-

arising by reason of an earlier action between the same parties involving the same issues. The plea was rejected, the Court holding that the parties cannot foreclose the Courts from exercising their discretion to grant or withhold relief in the public interest by the failure of the defendant to interpose the same defense in the earlier action.

Recently this Court held that the public interest in the enforcement of antitrust statutes permitted the maintenance of a declaratory judgment action, even though it was claimed that plaintiff was "in pari delicto" in violating the Robinson-Patman Act. United Cigar-Whelan

Stores Corp. v. H. Weinreich & Co., Inc., D.C., 107 F.Supp. 89.

16. Cf. Fashion Originators' Guild v. Trade Comm., 312 U.S. 457, 668, 61 S. Ct. 703, 85 L.Ed. 949.

17. Cf. Mulhens & Kropff v. Muelhens, Inc., D.C., 38 F.2d 287, 296–297; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 493, 62 S.Ct. 402, 86 L.Ed. 363.

18. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214, 71 S.Ct. 259, 95 L.Ed. 219. In fact, the Government has already instituted antitrust proceedings against one of the plaintiffs.

terest is caught in the cross-fire of wrongful conduct by the litigants, with both free to continue their illegal activities until such time as the Government shall intervene. On the other hand, permitting the prosecution of the respective claims by each of the parties, unburdened by the defense of "unclean hands," would, if successful, result in judgment and decree against each wrongdoer.

If, for example, as a result of a counterclaim or a separate suit either by the Government or any injured party, the plaintiffs were enjoined from alleged coercion of the small producers in their choice of advertising media, the public interest would be vindicated; so that granting of relief to plaintiffs in this action need not strengthen their asserted monopoly. Striking the defense would mean that plaintiffs' claim as to the illegal conduct of defendants could be heard on the merits and, if upheld, the public interest thereby served.

The motion to strike is granted.

The foregoing disposition makes it unnecessary to consider other aspects of the plaintiffs' motion.

Settle order on notice.

On Motion for Reargument

The ruling clearly relates to the defense of "unclean hands" labeled as such and so pleaded by the defendants whose answers were the subject of the plaintiffs' motion to strike. No other affirmative defense was pleaded by any defendant. Attention of counsel is directed to the portion of the Court's opinion [107 F.Supp. 600]), quoted incompletely in the briefs, referring to the fact that none of the defendants plead that the granting of the reduced rate for volume advertising would constitute illegal discrimination on the part of the defendants. Hence, the Court did not pass upon the defense now inferentially advanced in the motions for reargument that the relief sought would compel the doing of an illegal act. In this connection I repeat the statement, admittedly obiter dictum, that if it should appear upon the trial that compelling the defendants to accord plaintiffs the same

reduced rates now available to other purchasers of volume space would result in violation of antitrust statutes, then, obviously, the Court will not decree the performance of such an illegal act.

The motion for reargument is denied.