**NATCONTAINER CORPORATION et al.,
Plaintiffs,**

v.

**CONTINENTAL CAN COMPANY,
INC. et al., Defendants.**

No. 71 Civ. 2298.

United States District Court,
S. D. New York.

July 12, 1973.

Lester Lewis Jay, New York City, for plaintiffs.

Willkie, Farr & Gallagher, New York City, for defendant Continental Can Co., Inc.; Helmer R. Johnson, David L. Foster, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendant International Paper Co.; Henry L. King, James W. B. Benkard, Nicholas Weiskopf, New York City, of counsel.

Skadden, Arps, Slate, Meather & Flom, New York City, for defendant Westvaco Corp.; Leslie H. Arps, New York City, of counsel.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant St. Regis Paper Co.; H. Richard Wachtel, Grant S. Lewis, Kimba Wood Lovejoy, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs move herein: (a) for an order pursuant to Rule 12(f) of the Federal Rules of Civil Procedure ("FRCP") striking the affirmative defense of "unclean hands" interposed by defendants Continental Can Company, Inc. ("Continental"), International Paper Company ("International"), and St. Regis Paper Company ("St. Regis"); (b) for an order pursuant to Rule 12(b) FRCP dismissing the counterclaims of defendants Continental, International, and Westvaco Corporation ("Westvaco"); and (c) for an order pursuant to Rule 37(a)(2) FRCP compelling defendant Continental to answer plaintiffs' first set of interrogatories (relating to corrugated containers) served on January 24, 1972.

Plaintiffs' action is brought under the antitrust laws, 15 U.S.C. § 1 et seq. Each of the plaintiffs is identified in the amended complaint as an "independent box manufacturer" which is further defined as "an owner of a box plant which is not owned or controlled by or an affiliate of a Kraft liner board manufacturer." (Amended Compl. ¶ 20(f).) Six of the plaintiffs are incorporated under the laws of New York and two are incorporated under the laws of New Jersey. (Id. ¶¶ 3–10.) Each of the defendants and co-conspirators is defined as "a manufacturer of Kraft liner board that owns or controls a box plant or plants or is affiliated with or controlled

by a box plant or plants . . . ." (*Id.* ¶ 20(e).) Allegedly each defendant maintains offices, transacts business and is found in the Southern District of New York. (*Id.* ¶ 2.) The amended complaint charges defendants and others with engaging in "an unlawful combination and conspiracy in restraint of trade, and in acts and activities, the terms and purposes of which were and are to expel and exclude plaintiffs and other independent corrugated box manufacturers from the corrugated container industry and to achieve a monopoly control of that industry." (*Id.* ¶ 31.) It is alleged that the defendants, to achieve their unlawful goal, have engaged in various acts and activities which include, *inter alia,* that defendants have fixed and exacted from plaintiffs and other independent box manufacturers high, unreasonable and non-competitive prices for Kraft liner board (*id.* ¶ 33); that defendants have subjected plaintiffs and other independent box manufacturers to a continuing price squeeze wherein defendants, while exacting high, unreasonable and non-competitive prices for Kraft liner board, have sold corrugated containers, of which Kraft liner board is an essential component, at unreasonably low prices and below their cost of production and at a great loss, subsidizing their box plant operations from the profits obtained from their sales of Kraft liner board and other paper products (*id.* ¶ 34); that defendants have enticed away plaintiffs' customers by offering to sell and selling corrugated containers at discriminatorily lower prices than charged to existing customers of defendants (*id.* ¶ 35); that defendants have disclosed to each other and exchanged prices charged by them to plaintiffs and other independent manufacturers for Kraft liner board (*id.* ¶ 36); that defendants have acquired and continue to acquire box plants where not restrained by court decree or Federal Trade Commission order, and where so restrained have engaged in a proliferation of construction of such plants despite their continuing losses from the operation of box plants (*id.* ¶ 37); and that defendants and their co-conspirators have entered into arrangements and understandings to accord unlawful, reciprocal and discriminatory benefits to each other (*id.* ¶ 38). Plaintiffs charge that the conspiratorial plan and unlawful activity of the defendants has been of long duration, allegedly having commenced in or about 1945 and continuing up to the present. (*Id.* ¶ 23.)

Also at issue is the validity of so-called "national account plans" engaged in by defendants in their sales of corrugated containers in competition with the plaintiffs. Under a national account plan the total requirements of a customer for all of its branches or outlets are aggregated and the price granted to the customer is computed with regard to that total. Such national account plans frequently have been condemned depending upon the terms and circumstances of the sales agreement or arrangement.

Plaintiffs demand treble damages, estimated to be at least $24,000,000. (*Id.* ¶ 46.) In addition, plaintiffs seek to enjoin defendants from continuing the alleged unlawful acts, and an order requiring divestiture by defendants of all corrugated container manufacturing facilities owned or controlled by them.

## MOTION TO STRIKE AFFIRMATIVE DEFENSES

Defendants Continental, International and St. Regis have each interposed an affirmative defense of "unclean hands". Continental asserts for a fourth, separate and complete defense to the claims asserted in the amended complaint that "plaintiffs invoke the jurisdiction of this Court with unclean hands and are barred from prosecuting this action." (Continental Amended Ans. ¶ 52.) International asserts, for a fourth affirmative defense, that "[p]laintiffs have unclean hands and are not entitled to equitable relief" (International Ans. ¶ 52) and, for a sixth affirmative defense, that "plaintiffs should be barred on principles of equity from invoking the

equity powers of this Court" (*id.* ¶ 69) on the grounds that plaintiffs allegedly have violated § 43(a) of the Lanham Act, 15 U.S.C. §§ 1121, 1125(a); § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1); and principles of common law. (*Id.* ¶¶ 54–70.) St. Regis asserts for a second affirmative defense that "[p]laintiffs have unclean hands and are not entitled to equitable relief." (St. Regis Ans. at 4.)

It should be noted that International and St. Regis have limited their unclean hands defenses to plaintiffs' requests for equitable relief only. Continental, however, by submitting this defense as a bar to the prosecution of the entire action, encompasses not only equitable relief but money damages as well.

■ The interposition of the defense of unclean hands against relief in the form of money damages is clearly improper. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214, 71 S.Ct. 259, 95 L.Ed. 219 (1951); Trebuhs Realty Co. v. News Syndicate Co., 107 F.Supp. 595 (S.D.N.Y.1952).

■■ With respect to the defense of unclean hands as a bar to equitable relief, all three defendants rely heavily on the language of § 16 of the Clayton Act, 15 U.S.C. § 26, that injunctive relief may be granted "when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . . ." It is their contention that the equitable doctrine of unclean hands is available as a defense to a suit for an injunction under § 16. Continental, in its memorandum submitted in opposition to the motion to strike its fourth, separate and complete defense states:

"Plaintiffs complain about a cost-price squeeze, and for purposes of this motion it must be assumed that plaintiffs have commenced this action because they believe that the price of corrugated containers is too low and they would like to increase it. Of course, if plaintiffs and defendants (who compete with them) were to agree to raise prices, the Sherman Act would be violated. Similarly, a conspiracy to restrain trade or monopolize trade through the use of judicial proceedings has been condemned as a violation of the Sherman Act." (Citations omitted.) (Memo. of Continental at 3.)

International has followed the same path in support of its fourth affirmative defense, claiming that

"[i]t is apparent that the entire thrust of plaintiffs' alleged grievance is that prices for the products they sell, corrugated containers, are too low. It may well be, as International has reason to suspect, that plaintiffs' real motive for instituting this action is to increase and fix the prices of such containers." (Memo. of International at 14.)

In the case of Continental and International no such allegations appear in their answers to illuminate the basis for a claim of unclean hands. St. Regis, rather than basing its claim of unclean hands upon the institution of the present lawsuit, and without illumination in its answer, asserts that its second affirmative defense is based on the same facts alleged in the first counterclaim of Continental, the sixth affirmative defense of International, the counterclaims of defendant Mead Corporation, and the counterclaim of Westvaco, *i. e.*,

"that plaintiffs . . . misrepresented that their boxes conformed to minimum standards prescribed by rules filed with the Interstate Commerce Commission, and thereby injured their own customers and unfairly competed with other box manufacturers." (Memo. of St. Regis at 1 n. 1.)

Returning, then, to International, its sixth affirmative defense (International Ans. ¶¶ 54–70) alleges various viola-

tions of § 43(a) of the Lanham Act, 15 U.S.C. §§ 1121, 1125(a), and § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), that is, that plaintiffs, for a period of at least ten years, have sold corrugated containers with certificates affixed thereto purportedly showing compliance with certain minimum standards required under the Interstate Commerce Act, 49 U.S.C. § 1(6), although they knew that such containers failed to meet such minimum standards, and, by reason of such failure, were substantially cheaper. By reason of such practice, it is further alleged that plaintiffs have violated § 43(a) of the Lanham Act, have received inflated prices and have competed unfairly with defendants. Nowhere, even by implication, is there any claim of a violation of the antitrust laws by plaintiffs as a basis for International's sixth affirmative defense, nor is there any allegation that International's violation of the antitrust laws was in direct response to plaintiffs' violation of the Lanham Act. Indeed, the converse may prove true, i. e., that plaintiffs' violation of the Lanham Act was in response to International's anticompetitive activities. Insofar as the alleged violation of the Lanham Act is asserted as a basis for equitable imposition of a defense of unclean hands, it must fail. Defendant's contention that the defense may be based on a claim that the purpose of the suit is anticompetitive and for the purpose of fixing prices also must fail. As stated in Trebuhs Realty Co. v. News Syndicate Co., supra, 107 F.Supp. at 601:

" . . . if it should appear upon the trial that compelling the defendants to accord plaintiffs the same reduced rates now available to other purchasers of volume space *would result in violation of antitrust statutes, then, obviously, the Court will not decree the performance of such an illegal act.*" (Emphasis added.) ·

The Court concludes that the defense of unclean hands is available neither with respect to relief by way of damages nor by way of equitable relief. Credit

Bureau Reports, Inc. v. Retail Credit Co., 476 F.2d 989, 994–995 (5th Cir. 1973); Trebuhs Realty Co. v. News Syndicate Co., supra, 107 F.Supp. 595.

## MOTION TO DISMISS COUNTERCLAIMS

Plaintiffs move to dismiss the counterclaims of defendants Continental, International and Westvaco upon the grounds: (1) that pursuant to 28 U.S.C. § 1332 the court does not have jurisdiction of said counterclaims; (2) that pursuant to 28 U.S.C. § 1391(a) the venue of said counterclaims is improperly laid in the Southern District of New York; and (3) that in the interests of justice this Court, in the exercise of its discretion, should grant the motion.

Continental asserts as grounds for its first counterclaim §§ 39 and 43 of the Lanham Act, 15 U.S.C. §§ 1121, 1125, and the jurisdictional statute relating to patents, copyrights, trade-marks and unfair competition, 28 U.S.C. § 1338(a). (Continental Amended Ans. ¶¶ 53–54.) As grounds for its second counterclaim it again cites to §§ 39 and 43 of the Lanham Act, to 28 U.S.C. § 1338(b) and to the pendent jurisdiction of the court. (Id. ¶¶ 77–78.)

International and Westvaco each assert as grounds for its counterclaims §§ 39 and 43(a) of the Lanham Act and the ancillary and pendent jurisdiction of this court. (International Ans. ¶ 71; Westvaco Ans. ¶ 14.)

Generally, as has already been touched on, the counterclaims allege that railroad and motor carriers have established certain minimum standard requirements for corrugated containers used for shipment of goods in interstate commerce and have developed a certificate to be imprinted on the containers to indicate that the containers comply with these standards. Shippers utilizing containers which do not comply with these standards are required to pay increased freight charges. It is further alleged that plaintiffs have manufactured containers which have failed to meet the

said standards and have imprinted on them certificates falsely representing that the containers comply with the standards. Such action enables plaintiffs to manufacture and sell containers at costs below those of their competitors, including defendants herein, whose containers and certificates comply with the established standards, thereby injuring defendants by diverting substantial trade in commerce from defendants to plaintiffs. This, defendants allege, constitutes a violation of § 43(a) of the Lanham Act, which reads as follows:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation." 15 U.S.C. § 1125(a)

If a claim is stated under § 43(a), as defendants contend, then original jurisdiction obtains under § 39 of the Lanham Act, which reads as follows:

"The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. § 1121.

It seems clear that § 43(a) of the Lanham Act creates a federal cause of action for false representation of goods in commerce. Alum-A-Fold Shutter Corp. v. Folding Shutter Corp., 441 F.2d 556 (5th Cir. 1971); L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954); Mortellito v. Nina of California, Inc., 335 F.Supp. 1288 (S.D.N.Y.1972); Bogene Inc. v. Whit-Mor Manufacturing Co., 253 F.Supp. 126 (S.D.N.Y.1966); American Rolex Watch Corp. v. Jack Laufer & Jan Voort, Inc., 176 F.Supp. 858 (E.D.N.Y.1959). Furthermore, an action based on § 43(a) is not dependent upon an allegation that the complainant owns a federally registered trademark, nor does it require that such action be substantially related to a claim regarding any federally registered trademark. Apollo Distributing Co. v. Apollo Imports Inc., 341 F.Supp. 455, 458 (S.D.N.Y.1972); Potato Chip Institute v. General Mills, Inc., 333 F.Supp. 173, 179 (D.Neb.1971), aff'd, 461 F.2d 1088 (8th Cir. 1972); N. S. Meyer, Inc. v. Ira Green, Inc., 326 F.Supp. 338, 342 (S.D.N.Y.1971); Glenn v. Advertising Publications, Inc., 251 F.Supp. 889, 902 (S.D.N.Y.1966). Although the certificate on the containers is not plaintiffs' or defendants' trademark, plaintiffs and defendants are competitors, and defendants, in support of their counterclaims, may show by a preponderance of the evidence: (1) the use by plaintiffs in connection with their containers of a false description or representation, i. e., the false certification, tending falsely to describe their containers; (2) the causing by plaintiffs of their containers to enter commerce; and (3) the reasonable belief of defendants that they are or are likely to be damaged by the use of such false description or representation. Potato Chip Institute v. General Mills, Inc., supra, 333 F.Supp. at 179; Mutation Mink Breeders Association v. Lon Nierenberg Corp., 23 F.R.D. 155 (S.D.N.Y.1959). Accepting the allegations of the counterclaims as true for present purposes, viable § 43(a) claims have been interposed.

In view of this conclusion, it is unnecessary to dwell at length on

whether jurisdiction also may be based upon 28 U.S.C. §§ 1338(a), 1338(b) and pendent jurisdiction principles.[1] Since any claim arising under § 43(a) of the Lanham Act, whether or not it involves a patent, copyright, or trademark, is a claim arising "under the copyright, patent . . . or trade-mark laws" within the meaning of § 1338(b), original jurisdiction also exists under the latter statute. N. S. Meyer, Inc. v. Ira Green, Inc., *supra*, 326 F.Supp. at 342; Zandelin v. Maxwell Bentley Manufacturing Co., 197 F.Supp. 608 (S.D.N.Y.1961). Insofar as the counterclaims state a common law unfair competition cause of action predicated on the same essential facts on which the § 43(a) counterclaims are predicated, jurisdiction is properly based on 28 U.S.C. § 1338(b).

▮ In light of the foregoing, plaintiffs' assertion that the court lacks jurisdiction of the counterclaims by reason of lack of diversity of citizenship, and additionally with respect to Continental's counterclaims that they do not allege that the matter in controversy exceeds $10,000, as provided in 28 U.S.C. § 1332, is without merit. Likewise, plaintiffs' objection to the venue of Westvaco's counterclaim against the two New Jersey plaintiffs on the ground that Westvaco does not have a principal place of business in the State of New York, under 28 U.S.C. § 1391(c), is without merit. General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932); Lesnik v. Public Industrials Corp., 144 F.2d 968, 977 (2d Cir. 1944). Accordingly, the motions to dismiss the counterclaims for lack of jurisdiction or improper venue are denied.

▮ Finally, with respect to the counterclaims, plaintiffs assert that they should be dismissed in the interest of justice, characterizing them as "permissive" counterclaims. Plaintiffs contend that "[i]n view of the disparate and unrelated technical factual issues and legal principles involved in the Complaint and the counterclaims, it is respectfully submitted that in the exercise of the Court's authority and discretion the counterclaims should be dismissed." (Memo. in Support of Pl.'s Motion to Dism. Countercl. at 28–29.) The Court does not agree with this contention. There is a close logical relationship between plaintiffs' allegations and the counterclaims asserted. Plaintiffs complain about a price-cost squeeze which will necessarily involve a detailed inquiry as to plaintiffs' pricing methods and practices. According to defendants' counterclaims, part of plaintiffs' pricing practices involves their selling cheaper corrugated containers on which they have placed false certificates. Rule 13(a) F.R.Civ.P. provides that a counterclaim is compulsory ". . . if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." No "third parties" are required for the adjudication of the counterclaims. The counterclaims arise out of the transactions and occurrences (*i. e.*, the sale of corrugated containers) which are the subject matter of the complaint. The counterclaims are compulsory. United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213 (2d Cir. 1955). Accordingly, the Court denies in all respects the motion

1. 28 U.S.C. § 1338 provides:

"*Patents, plant variety protection, copyrights, trade-marks, and unfair competition*

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

to dismiss the counterclaims filed herein.

## MOTION TO COMPEL ANSWERS TO INTERROGATORIES

Plaintiffs also move to compel Continental to answer their first set of interrogatories (relating to corrugated containers) served on January 24, 1972. Continental's objections are directed primarily to the time period and geographic scope of the interrogatories.

In its amended complaint plaintiffs allege that the conspiracy commenced in or about 1945 and in Interrogatories 1, 2 and 3 demand information for a 29-year period extending back to January 1, 1944. The line of commerce involved in the action is the manufacture, distribution and sale of corrugated containers; Continental alleges that it has sold this item only since 1956. (Continental Amended Ans. ¶ 64.) It further appears that although subsequent to 1945 defendants allegedly engaged in a program of acquiring box plants, many of such acquisitions were divested pursuant to antitrust decrees (Amended Compl. ¶ 23) and the present conspiracy involves the construction rather than the acquisition of such plants. (*Id.* ¶ 24.) With respect to Interrogatories 4–11 inclusive, the time period covered is from January 1, 1960. In each case Continental, in responding to the interrogatories, has limited such responses to the period from January 1, 1966.

In its responses to the interrogatories, Continental has limited the geographic scope to its corrugated products plants located in Portland, Conn.; Teterboro, N. J.; and Philadelphia, Pa., although it admits that it "owns or controls and/or operates 20 box plants and two sheet plants in the United States : . . . " (Amended Ans. ¶ 26.) It argues that it knows plaintiffs as its competitors only in the New York metropolitan area.

Returning to the time period to be covered by the interrogatories, "[t]he question, of course, which is always

presented is what is a reasonable period under the circumstances." Quonset Real Estate Corp. v. Paramount Film Distributing Corp., 50 F.R.D. 240, 241 (S.D.N.Y.1970). The information requested under Interrogatories 1–3 inclusive for the period from January 1, 1944, is primarily "background" information, and since Continental allegedly has sold corrugated containers only since 1956, the answers to such interrogatories should not be unnecessarily burdensome. "The history of the organization throws light upon its illegality." Baush Machine Tool Co. v. Aluminum Co. of America, 72 F.2d 236, 240 (2d Cir.), cert. denied, 293 U.S. 589, 55 S.Ct. 104, 79 L.Ed. 683 (1934).

"The interrogatories seeking information as to acts of the defendant before the period not barred by the Statute of Limitations seek relevant information since restrictive activities before the bar of the statute may very well be shown to have had restrictive effects during the period not barred." Allied Shoe Machinery Corp. v. United Shoe Machinery Corp., 19 F.R.D. 181, 182 (D.Mass.1956).

Accordingly, Continental's objection to the time period covered by plaintiffs' Interrogatories 1–11 inclusive is overruled.

Likewise, the attempt by Continental to restrict the geographic scope of the interrogatories to the area of competition between it and plaintiffs is improper since "interrogatories directed toward acts of the defendant which might be restraints but which acts were directed against competitors of the defendant other than the plaintiff seek information relevant to the case . . . . " *Id.* at 182. Plaintiffs allege that the "section of the country involved is the entire United States." (Amended Compl. ¶ 30.) Therefore, Continental's objection to the geographic scope of plaintiffs' Interrogatories 1–11 inclusive is overruled.

With respect to Interrogatory 4(e), objection thereto is overruled since the information requested is clearly relevant and no showing is made of confidentiali-

ty. The objections to Interrogatories 4(i) and 4(j) are overruled. The cost information requested under Interrogatories 4(g) and 4(h) is relevant and to the extent available must be furnished. Gordon, Wolf, Cowen Co. v. Independent Halvah & Candies, Inc., 9 F.R.D. 700, 702 (S.D.N.Y.1949). Furthermore Schedule 1, which forms a part of Continental's answer to Interrogatory 4(d), should describe its Kraft liner board by "grade" as defined in definition "M" of plaintiffs' interrogatories, rather than by coined names of its own creation. More specific answers to Interrogatories 6(c) and (d) are required. Interrogatories 6(g) and (h) must be answered.

Plaintiffs' motion to compel answers by Continental to plaintiffs' interrogatories is granted and Continental is directed to make a further review of its records and to fully, fairly and accurately disclose the facts and information requested.

So ordered.